In the Matter of Robert Patrick O'BRIEN and Barbara Eva Heuer O'Brien, No. 87–02579–S–7–KMS, Debtors.

William A. WEAR, Trustee in Bankruptcy, Plaintiff/Appellee,

v.

Robert Patrick O'BRIEN and Barbara Eva Heuer O'Brien, et al., Defendants/Appellants.

No. 88–3265–CV–S–2.

United States District Court, W.D. Missouri, S.D.

Dec. 7, 1988.

James R. Doran, Springfield, Mo., for debtors Robert Patrick O'Brien, Barbara Eva H. O'Brien.

Gary Nelms, Springfield, Mo., for trustee William A. Wear.

Brad Cantwell, Springfield, Mo., for Boatmen's Nat'l Bank, White River Orthopedic Clinic, Inc.

## ORDER

COLLINSON, Senior District Judge.

This matter is on appeal from the final order of the Bankruptcy Court for the Western District of Missouri [1] requiring appellants Boatmen's National Bank of Springfield, as Trustee, and White River Orthopedic Clinic, Inc., as Plan Administrator, to turn over to William A. Wear, Sr., Trustee in Bankruptcy, all of the account of debtor Robert Patrick O'Brien in the White River Orthopedic Clinic, Inc., profit sharing plan, an ERISA-type account. The Bankruptcy Court's order required the funds be included in the bankruptcy estate and ordered the claimed exemption of those funds be denied. For reversal, appellants argue three points: that the anti-alienation provision in the trust instrument, required by the Employee Retirement Income Security Act of 1974 (ERISA), excludes the trust funds from the bankruptcy estate under Section 541 of the Bankruptcy Code, or alternatively, that the funds are excluded from the estate by Section 541 because the profit sharing plan qualifies as a spend-thrift trust under Missouri law, or alternatively, that ERISA creates an exemption for the funds under Section 522(b)(2)(A) of the Code. For the reasons discussed below, we conclude that the debtor's interest in the funds is property of the estate and that an exemption may not be claimed under 11 U.S.C. § 522(b)(2)(A). Accordingly, the order of the Bankruptcy Court is affirmed. The Court exercises jurisdiction pursuant to 28 U.S.C. § 158.

## I.

## FACTS

Co-debtor, Robert Patrick O'Brien is a licensed physician who has practiced the last several years in Branson, Missouri. At one time Dr. O'Brien operated a sole proprietorship which maintained the Robert P. O'Brien, M.D. Profit Sharing Plan ("Keogh Plan") from July 14, 1980, to December 31, 1980. Since then Dr. O'Brien has served as an employee of White River Orthopedic Clinic, Inc. ("White River"), a Missouri corporation. White River was incorporated on December 22, 1980 pursuant to Chapter 351 RSMo. Dr. O'Brien is the sole shareholder of the corporation. Dr. O'Brien practiced medicine in Branson as a sole proprietor prior to White River's incorporation.

From January 1, 1981 to the present, White River has maintained the White River Orthopedic Clinic, Inc. Integrated Profit Sharing Plan and Trust ("White River Plan"). The account balance of Dr. O'Brien in the Keogh Plan was transferred to The Boatmen's National Bank of Springfield as Trustee of the White River Plan so that the The Boatmen's National Bank of Springfield now holds Dr. O'Brien's Keogh account balance as a segregated account of the White River Plan. Co-debtor Barbara Eva Heuer O'Brien, wife of Dr. O'Brien, has no account balance in the segregated Keogh account or the White River Plan.

With the Bankruptcy Court below, William A. Wear, Trustee, filed a Complaint for Turn Over Order praying for an order of the Bankruptcy Court to direct The Boatmen's National Bank of Springfield, White River, and the debtors to pay to the Trustee the account balance of Dr. O'Brien in the White River Plan and the segregated Keogh account balance. The Bankruptcy Court ruled that said segregated Keogh account balance and said account balance in the White River Plan were not excluded or exempted from the bankruptcy estate and therefore ordered The Boatmen's National Bank of Springfield as Trustee and White River Orthopedic Clinic, Inc., as Plan Administrator to turn over to William A. Wear, Sr., Trustee in Bankruptcy, said accounts. Timely notices of appeal were filed by the parties and this matter is now before this Court, ripe for ruling.

**1.** The Honorable Karen M. See, Judge, United States Bankruptcy Court for the Western District of Missouri.

## II.

### STATEMENT OF THE ISSUES PRESENTED

The appellee has accepted the statement of the issues as presented in the appellants' Brief. Said issues are set out below:

I. Is Dr. O'Brien's account balance in the White River Orthopedic Clinic, Inc. Integrated Profit Sharing Plan and Trust excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2) in that:

A. "Applicable nonbankruptcy law" includes ERISA, or

B. "Applicable nonbankruptcy law" and 11 U.S.C. § 541(c)(2) were intended to preserve the status of traditional spendthrift trusts as recognized by state law, and the White River Orthopedic Clinic, Inc. Integrated Profit Sharing Plan and Trust is a spendthrift trust as recognized by Missouri law.

II. Is Dr. O'Brien's account balance in the White River Orthopedic Clinic, Inc. Integrated Profit Sharing Plan and Trust exempted from the bankruptcy estate pursuant to 11 U.S.C. § 522(b) in that the term "Federal law, other than subsection (d) of this section" as set forth in 11 U.S.C. § 522(b)(2)(A) includes the ERISA anti-assignment and anti-alienation provision of IRC section 401(a)(13).

This Court in this order makes no new findings of fact, therefore rendering Bankruptcy Rule 8013 inapplicable. On this appeal this Court is to determine whether the Bankruptcy Court properly applied the law.

## III.

### CONCLUSIONS OF LAW

The Court will discuss the above-stated issues in the order in which they were presented.

*Issue "I.A.": Is the account balance "excluded" from the estate because "applicable nonbankruptcy law" in Section 541(c)(2) includes ERISA?*

■ Property of a debtor generally may only be kept beyond the reach of the trustee in one of two ways: either by being "excluded" or "exempted." The difference is not simply one of semantics, at least not in this particular case. Property that is "excluded" never comes into the bankruptcy estate in the first place. Very little property is actually excluded from the estate. In fact, the Code provides that, except for the interests described in Section 541(b) and Section 541(c)(2), "all legal or equitable interests of the debtor in property as of the commencement of the case" comprise the bankruptcy estate. 11 U.S.C. § 541(a)(1).

On the other hand, "exempted" property is originally included in the estate, then is "exempted out" by specific provision of the Code (or other federal law) or by certain state exemptions.

> All property of the debtor [except that specified in subsections 541(b) and 541(c)(2)], even property needed for a fresh start, is included in the estate. After the property comes into the estate, the debtor is then permitted to exempt property needed for a fresh start.

*In re Graham*, 726 F.2d 1268, 1271 (1984).

The appellants' first argument is essentially that ERISA trust funds are "excluded" by § 541(c)(2). That section provides as follows:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under *applicable nonbankruptcy law* is enforceable in a case under this title.

The appellants contend that the phrase "applicable nonbankruptcy law" should be read as to include the ERISA provision of IRC Section 401(a)(13), which provides *inter alia*, that for a trust to qualify under that particular IRC Section, its terms must provide that "benefits provided under the [trust] plan may not be assigned or alienated." IRC § 401(a)(13). As the appellants' argument continues, since such anti-alienation and anti-assignment provisions are found in Section 15.2 of the White River Plan and therefore constitute a restriction the transfer of a beneficial interest of Dr. O'Brien and the profit-sharing account balance that is enforceable under IRC Section 401(a)(13), then an interest in

such an ERISA plan qualifies as excepted property under § 541(c).

However, in their brief on appeal the appellants frankly admit that the Eighth Circuit considered the question of whether "applicable nonbankruptcy law" included ERISA in the case of *In re Graham*, 726 F.2d 1268 (8th Cir.1984). In *Graham*, the Eighth Circuit noted that "[a] great majority of the bankruptcy courts which have considered the question of a debtor's pension rights under the new Code have concluded that tax-qualified ERISA pension plans created by the debtor's employer are property of the bankruptcy estate." *Id.* at 1273. The Eighth Circuit considered the opinions written in other jurisdictions and concluded that "while ERISA-required anti-alienation clauses may preempt state law and preclude the use of judgment enforcement devices provided thereunder, *they do not preclude inclusion of pension benefits in a debtor's bankruptcy estate by operation of federal law.*" *Id.* (Emphasis added). Accordingly, the Court concluded that ERISA pension plans *are* property of the estate.

As best as this Court can determine, *Graham* is still good law in this Circuit. Therefore, this particular argument of the appellants is rejected.

*Issue "I.B.": Property in spendthrift trust excluded by Section 541(c)(2).*

■ Appellants' best argument is that the trust money is "beyond the reach" of the trustee because it is in a spendthrift trust.

> In general terms, a spendthrift trust is one in which the right of the beneficiary to future payments of income or capital cannot be voluntarily transferred by the beneficiary or reached by his or her creditors. There is a conflict of authority among the states on the question of the validity of such trusts and on the extent to which a beneficiary's right to future income and principal can be protected. *See* 2 A. Scott, *The Law Trusts* § 151 (3d ed. 1967); G. Bogart, *Handbook of the Law of Trusts*, § 40 (5 ed. 1973).

*In re Graham*, 726 F.2d 1268, 1271 (1984).

Missouri has long recognized spendthrift trusts and its law on the subject has been codified in Missouri Revised Statute § 456.080. Under the old Bankruptcy Act, to the extent a state recognized the validity of a spendthrift trust provision, the trustee in bankruptcy had no rights to the trust funds. *First Northwestern Trust Co. v. Internal Revenue Service*, 622 F.2d 387 (8th Cir.1980). Under the new Code, the definition of what becomes property of the "estate" is much more inclusive. Nevertheless, the legislative history of Section 541(c)(2) establishes that Congress intended by that Section to preserve the status traditional spendthrift trusts had under the old Act. The House Report that accompanied their Bill, H.R. 8200, explained as follows:

> The Bill ... continues over [from the Act] the exclusion from property of the estate of the debtor's interest in a spendthrift trust to the extend the trust is protected from creditors under applicable State law. The bankruptcy of the beneficiary should not be permitted to defeat the legitimate expectations of the settlor of the trust.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 175–76 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6136.

As monies in a spendthrift trust are protected from claims of a bankruptcy trustee, the Court must determine whether the trust herein qualifies as a spendthrift trust.

Section 456.080.3 RSMo. reads as follows:

> 3. A provision restraining the voluntary or involuntary transfer of beneficial interests in trust will prevent the settlor's creditors from satisfying claims from the trust assets unless at the time the trust was established or amended:
>
> (1) The settlor was the sole beneficiary of either the income or principal of the trust or retained the power to revoke the trust; or
>
> (2) The settlor was one of a class of beneficiaries and retained a right to receive a specific portion of the income or principal of the trust that was determinable solely from the provisions of the trust instrument; or

(3) The conveyance of assets to the trust was intended to hinder, delay or defraud creditors or purchasers pursuant to Section 428.020 RSMo.

The court below essentially held that § 456.080.3(1) prevented the White River Plan from being considered a spendthrift trust because "[u]nder Article XIV of the profit sharing trust, White River Orthopedic Clinic, Inc. reserves the right to amend or terminate the trust at any time. The Court finds that White River Orthopedic Clinic, Inc. is the alter ego of Dr. O'Brien and that the power of the corporation to terminate or revoke the trust is in essence the power of Dr. O'Brien." *Order* at pp. 3-4. The Bankruptcy Court accordingly found that, as to the interests of the debtor, the profit sharing plan in question was not a valid spendthrift trust under Missouri law.

Appellants and appellees agree that the essence of the Bankruptcy Court's reasoning in invalidating the White River Plan was that the White River corporation was and is the alter ego of Dr. O'Brien. As mentioned above, Dr. O'Brien is an employee of White River. However, Dr. O'Brien is also the sole shareholder of the corporation. Where the litigants part company is over how far the courts should go in recognizing Dr. O'Brien and White River as two separate and distinct legal entities. In appellants' brief, they have "conceded that White River was controlled and influenced by one person (Dr. O'Brien) ..." However, appellants vigorously contend that White River and Dr. O'Brien are nevertheless to be considered separate and distinct entities. As pointed out in the brief of the appellees, the appellants "insist that the corporation, not Dr. O'Brien, is the settlor of the profit sharing trust and that the corporation, not Dr. O'Brien, is the entity with power to revoke." Appellee's Brief at p. 9.

"Ordinarily, a corporation is regarded as a separate entity, distinct from the members who compose it." *Krajcovic v. Krajcovic,* 693 S.W.2d 884, 886 (Mo.App. 1985). This is normally the rule even in cases where there is a single stockholder. *Love v. Ben Hicks Chevrolet, Inc.,* 655 S.W.2d 574, 576 (Mo.App.1983). However, in exceptional cases, "courts will look through corporate organizations to individuals when necessary to prevent injustice...." *Id.*

In *Krajcovic, supra,* a doctor was attempting to avoid having income, earned pursuant to his medical practice but technically earned by his solely-owned corporation, included in calculations having to do with the amount of support he would have to pay his former wife and children. The Appeals Court wrote:

> In the instant case the husband owns 100% of the corporation, is the president, and has complete control over the corporation. Under the alter ego or instrumentality rule when a corporation comes under the domination of a person as to have become a mere instrument of that person and is really indistinct from the person controlling it then the corporate form will be disregarded if to retain it results in injustice.

*Krajcovic,* at 887.

Today this Court holds that even if in some cases an ERISA pension trust could be deemed a spendthrift trust under Missouri law, the facts before the Court in this matter require that we "pierce the corporate veil." Once having done so, we then clearly see that the true settlor of the trust in question, and the person with the power to revoke the trust at any time, is Dr. O'Brien. Section 456.080.3 RSMo. clearly tells us that a spendthrift trust fails if the settlor, at the time the trust was established, either was the sole beneficiary or "retained the power to revoke the trust." As pointed out by the court below, under Article XIV of the profit sharing trust, White River reserved the right to amend or terminate the trust at any time.[2] If Dr. O'Brien is to be regarded as one and the

---

**2.** Section 14.1, in pertinent part, reads:
RIGHT TO AMEND OR TERMINATE. The Employer expressly reserves the right at any time to amend his Adoption Agreement with the approval of the Trustee, or terminate the Employer's Plan and Trust established hereunder.

same as White River, and for the purpose of deciding this case, the Court does, then the spendthrift clause should not be enforced. The prohibition on self-settled spendthrift trusts is based on the reasoning that it is inequitable for a person to enjoy the benefit of his assets, while at the same time putting those assets outside the reach of his creditors. Bogert, *The Law of Trusts and Trustees*, § 223, p. 477 (Rev. 2 ed. 1984); *see also Elect. Workers v. IBEW–NECA*, 583 S.W.2d 154, 162 (Mo. 1979). Though there may be several legitimate legal or tax reasons for White River and the doctor to be regarded as separate legal entities, defeating the interests of creditors is not among them. The Court does not imply, and it is not alleged by the parties, that Dr. O'Brien expressly set up this arrangement to intentionally defraud creditors. The unfortunate turn of events that forced the debtors into bankruptcy was not foreseen when the retirement plan was entered into. Nevertheless, such an arrangement would have the effect of frustrating creditors if allowed to stand.

Appellants offer the case of *Bolton Roofing Co., Inc. v. Hedrick*, 701 S.W.2d 183 (Mo.App.1985) as an example of a Missouri court upholding a spendthrift trust from claims of a husband's creditors. However, a close examination of the facts of that case reveals it to be clearly distinguishable from the case at bar. In *Bolton*, creditors of the husband attempted to get to a house belonging to the man and his wife that had been transferred into a spendthrift trust. Reporting from appellee's brief on appeal at page 8:

> The court reasoned that the creditors had not been injured by the conveyance into the trust, because they could not have reached the real estate asset, even if it had not been transferred to the trust, because it was entireties property, which under Missouri law is not subject to the creditors of one spouse only. Thus, the Court concluded the spendthrift did not offend either the "statute or public policy." 701 S.W.2d at p. 185.

In contrast, the case at bar involves joint debtors. Also, had White River, Inc. not made the contributions into the fund it would have either paid the money to the doctor as income or retained it in the name of the corporation. Either way, the money would be subject to the claims of creditors. Thus, if the spendthrift clause were to be given effect in this case, the creditors would be actually prejudiced, unlike those in *Bolton.*

Spendthrift provisions should only be upheld as long as they do not contravene a statute or public policy. *Elec. Workers, supra*, at 157. Public policy does not allow a person to create a trust for his own benefit and include a provision restraining the rights of his creditors. *Id.* As stated by the Missouri Supreme Court in *Elec. Workers*, "[i]f a spendthrift clause such as this were to be held enforceable, who is to say that all wages of employees could not be sheltered from the claims of creditors by similar agreements." *Id.* at 162.

The reasons for creating and enforcing spendthrift trusts would not be served if this Court were unwilling to look beyond legal forms in this case. We therefore hold that the pension plans in the instant case are not spendthrift trusts, and therefore are not excluded from the property of the estate under § 541(c)(2).

*Issue "II": Is the trust money exempt pursuant to 11 U.S.C. § 522(b)?*

■ Although the profit sharing account comes into the bankruptcy estate, *i.e.* is not "excluded," the Court must now examine whether the fund could be "exempted out" pursuant to § 522 of the Code. That section permits a debtor to choose either the federal exemptions listed at § 522(d) or those provided by state law. A debtor utilizing a state exemption system is permitted to also exempt "any property that is exempt under Federal law, other than subsection (d) of this section...." § 522(b)(2)(A).

"Appellants contend that the ERISA anti-assignment and anti-alienation provision of IRC § 401(a)(13) ... is 'Federal law' as defined in 11 U.S.C. § 522(b)(2)(A)." Appellants' Brief at p. 19. Virtually the same argument was considered and rejected by both the Fifth Circuit in *In re Goff,*

706 F.2d 574 (1983) and the Eighth Circuit in *In re Graham,* 726 F.2d 1268 (1984). Our appeals court wrote "[w]e thus conclude, as did the Fifth Circuit [in *Goff* at 586], that Congress did not intend to include ERISA plans within the other 'Federal law' exemption of § 522." *Graham* at 1274. Again, we believe *Graham* to still be good law in this circuit.

Finally, the Court notes that the debtor argued to the Bankruptcy Court below that he should receive all or part of the profit sharing account funds under the Missouri exemption statute, RSMo. § 513.430(10)(e), which provides that payment under a profit sharing plan may be exempted to the extent reasonably necessary for the support of the debtor or any dependent of the debtor. After making certain findings of fact, the Bankruptcy Judge concluded that the "debtor's income is adequate to pay for [these expenses], without any need to resort to the profit sharing funds." *Order* at p. 6.

Though the appellants do not specifically take issue with this finding on appeal, the Court states that if they had, this Court would find no reason to disturb the Bankruptcy Judge's finding on this point.

## IV.

### SUMMARY

For the foregoing reasons, the Court has found that the profit sharing plan was correctly found to be neither excluded nor exempted property and was therefore properly included in the bankruptcy estate. This Court hereby AFFIRMS the Bankruptcy Court's "turn over" order with regard to the profit sharing plan, including both the corporate and Keogh plan accounts.

IT IS SO ORDERED.