In re Ben P. GAINES and Shelba Jean Gaines, Debtors.

Bankruptcy No. 88–05043–S–7–KMS.

United States Bankruptcy Court,
W.D. Missouri.

Nov. 6, 1989.

Mark E. Fitzsimmons, Danny R. Nelson, Fitzsimmons, Schroeder & Nelson, Springfield, Mo., for petitioner.

Gregory A. Dorshorst, Craig A. Smith, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, Mo., for respondent.

## AMENDED MEMORANDUM OPINION

KAREN M. SEE, Bankruptcy Judge.

Pending is the Chapter 7 Trustee's objections to exemptions in a pension plan and IRAs, totaling $231,125.17, claimed by debtors, Dr. Ben Gaines and Shelba Jean Gaines. The court's original Opinion, issued on September 27, 1989, is hereby withdrawn and the following Amended Opinion is entered. The issues are: (1) whether debtors should be denied any exemption in the funds due to intentional concealment of information concerning a business they were operating at the time they filed bankruptcy; (2) whether debtors can permissibly exempt all the funds under the Missouri exemption statutes, which debtors contend grant a complete exemption to any property, including funds in an ERISA plan, which is not subject to execution under state or federal law outside bankruptcy; and (3) whether debtors can exempt all or part of the funds under the Missouri statute governing exemption of pension plans. The court has jurisdiction over this matter pursuant to 11 U.S.C. § 522 and enters its final order and judgment pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B).

## PROCEDURAL BACKGROUND

On November 21, 1988 debtors filed a Chapter 7 petition, Statement of Affairs for Debtors Not Engaged in Business and Schedules of Assets and Liabilities, all signed by debtors under penalty of perjury. Debtors filed amendments to their Schedules on January 4, January 19, February 7, March 15, and June 7, 1989. Debtors' Section 341 Meeting of Creditors was convened on December 16, 1988; an additional Section 341 Meeting was held February 3, 1989.

On January 11, 1989, the trustee filed objections to debtors' exemptions claimed in a pension plan, real property, and an automobile. On January 24, debtors filed suggestions in opposition asserting that Dr. Gaines' interest in his pension plan was exempt under Missouri law, that Dr. Gaines held only bare legal title in the real property, and that debtors would redeem their interest in the automobile.

The objections to exemptions were set for hearing on February 7, 1989; debtors, their counsel, and the trustee appeared. On that date, debtors filed amended Schedules that added two Individual Retirement Accounts ("IRAs") as property of the estate and exempt. The only issue heard was the objection to exemption of debtors' interests in the pension plan and IRAs. After testimony, written evidence and argument, at the conclusion of the hearing the court entered an oral ruling on the record. From a pension plan and IRAs which totaled $231,125.17 when bankruptcy was filed, the court allowed debtors a partial exemption in the amount of $50,000.00, based on factors such as age, health, ability to accumulate additional retirement funds and reasonable need in the future at time of retirement.

On July 17, 1989, before a written order had been entered on the original hearing, trustee filed his motion to reconvene the hearing on his objections to debtors' exemptions. The motion was based on the trustee's discovery of previously undisclosed business interests of debtors. On July 21, debtors filed a response objecting to the trustee's motion to reconvene the hearing on the objections to exemptions. Debtors' arguments were that: 1) they lacked sophistication and sufficient understanding of the Bankruptcy Code such that they failed to realize that they had to reveal an allegedly profitless business operation; 2) the business had been openly operated; 3) the bankruptcy estate had not been deprived of any assets; 4) the trustee had been provided with information other than the debtors' Schedules that disclosed the business; and 5) the trustee

waived the objection when he failed to litigate the issue at the February 7 hearing. Debtors' arguments against reopening the hearing for submission of additional evidence are without merit.

A hearing on the trustee's motion to reconvene was held on August 9, 1989. After additional testimony, written evidence, and argument, the court entered its ruling on the record, superseding the findings made at the conclusion of the original hearing. After considering the testimony and other evidence, the demeanor and credibility of the witnesses, the court's file, and the record of these proceedings, the court hereby memorializes its rulings for both the February 7 and August 9 hearings pursuant to Bankruptcy Rules 9014, 9021, and 7052.

## FINDINGS OF FACT

Debtors reside in the resort community of Branson, Missouri. Dr. Gaines is a dentist employed by Ben P. Gaines, D.D.S., Inc., a professional corporation. Dr. Gaines is the sole shareholder, director, and owner of Ben P. Gaines, D.D.S., Inc. He has been a practicing dentist for more than 30 years and the sole shareholder of Ben P. Gaines D.D.S., Inc. since incorporation in 1966. Ben P. Gaines D.D.S., Inc. established a pension plan under the provisions of the Employees Retirement Income Security Act of 1974 ("ERISA") for which Dr. Gaines is the sole member and beneficiary.

Dr. Gaines, who gives the appearance of an affluent, sophisticated professional person, has been involved in numerous and varied business transactions and business ventures unrelated to bankruptcy. In fact, he seeks to discharge debts from some of those business ventures in this bankruptcy proceeding. He is highly educated, holding both Bachelors and Doctor of Dentistry degrees. Likewise, Mrs. Gaines is educated and has business experience as evidenced by her work in her husband's dental office and as the operator of the bed and breakfast business conducted in debtors' home. Accordingly, the court finds that both debtors—and especially Dr. Gaines—have a great deal of business experience and a degree of sophistication in business matters above the level of the average person.

In their original Schedules and all subsequent amendments, debtors listed Dr. Gaines' interest in the pension plan as property of the estate. The IRAs were first listed as property of debtors' estate on February 7, 1989, the day of the first hearing of this matter. The pension plan interest was valued by debtors at $198,759.49; the IRAs were valued at $32,365.68. Dr. Gaines has exclusive control over the contributions to the pension plan, investment of the funds in the plan, and the rights to amend or terminate the plan. Debtors have similar rights and powers over their IRAs.

Dr. Gaines is 58 years old; Mrs. Gaines is 49. Both are in good health. Although Dr. Gaines testified that as a dentist, his income would be reduced if he lost the use of his hands, he also testified there was nothing wrong with his hands and his concern was mere speculation about any possible mishap that could occur in the future. There was no evidence of anything that presently impairs his ability to work. Debtors have between $700 and $800 in excess income over their monthly living expenses of $2,200.

In 1986, debtors reported $80,339.00 in gross income to the IRS; in 1987, they reported $46,218.00; in 1988, they reported $40,455.00 in adjusted gross income.

In July 1988, five months before filing their petition, debtors began a bed and breakfast business, known as Gaines Landing, in their home. Gaines Landing was run primarily by Mrs. Gaines. An accounting system was established and business records were kept. In 1988, in a period of about four months, before the bankruptcy was filed, 104 guests stayed at Gaines Landing. After starting the business, debtors purchased items which they used both personally and in the business, including an expensive hot-tub spa, a freezer and a sofa. Debtors included income and

expenses from the operation of Gaines Landing (including the spa and the other purchases) in their 1988 income tax return.

In their Statement of Affairs filed November 21, 1988, debtors did not disclose that they owned and operated Gaines Landing; Mrs. Gaines listed her occupation as housewife. In their Schedules and subsequent amendments filed November 21, 1988, and January 4, January 19, February 7, and March 15, 1989, debtors did not disclose that they owned and operated Gaines Landing. In their two Section 341 Meetings, debtors did not disclose that they owned and operated Gaines Landing, despite questions from the trustee that gave them the opportunity to disclose any information that had been previously omitted from the Schedules and Statement of Affairs. In the hearing on February 7, debtors did not disclose that they owned and operated Gaines Landing.

The court concludes that the business was affirmatively concealed at that hearing. It is noteworthy that in the Statement of Affairs and at the February 7 hearing, Mrs. Gaines testified that she was a housewife and her only work experience was in her husband's dentistry office. Mrs. Gaines' testimony that she was solely a housewife is wholly inconsistent with the later evidence, presented at the second hearing, that she was primarily responsible for operation of the bed and breakfast business and had 104 paying guests in the latter part of 1988 before the bankruptcy was filed in November.

Immediately before debtors amended their Statement of Affairs and Schedules to disclose ownership of the Gaines Landing business, a newspaper feature story about debtors' operation of Gaines Landing was published in the Springfield newspaper. Debtors first contacted their attorney, seeking to amend the statement of affairs to disclose the Gaines Landing Business

after publication of the feature story. Immediately after publication of the article, debtors' attorney contacted the trustee.[1] Debtors testified that they had not disclosed information regarding the Gaines Landing business prior to June 7 in their Statement of Affairs and Schedules, at the Section 341 meetings, or at the first hearing on objections to exemptions because: 1) they thought it was not important; 2) they started the business to test the waters and to see if it would "fly"; 3) they allegedly were not making a profit in the business when the bankruptcy as filed; and 4) they forgot to list the business because it simply did not occur to them to disclose it.

■ After observing the testimony and demeanor of the debtors, the court finds their explanations for the failure to disclose the Gaines Landing business until after publication of the newspaper story to be untenable, incredible, and unbelievable. The court further notes that one of the stated reasons—that debtors forgot about the business—is inconsistent with all the other reasons they offered, all of which required an evaluation of the information and a reasoned decision to omit it. The assertion that debtors forgot about the business is simply not believable. It is not credible that debtors could forget that 104 people had paid to stay in debtors' home shortly before the time the bankruptcy was filed. It is also noteworthy that debtors did not forget to disclose information about any other business ventures, even though some were much older, such as Strand Investments, which was formed for investment in motel property.

Arguments that the business, which was an asset of the estate, was not disclosed because it was allegedly not yet making a profit or because debtors did not think it was important are also without merit. As previously noted, both debtors possess greater knowledge of and experience in

---

1. There was no evidence that counsel advised debtors to omit information regarding the business from the schedules and statement of affairs or at any point during these proceedings. In fact, it is the court's understanding that debtors'

counsel first became aware of the business when the newspaper story was published and thereafter, debtors contacted him to amend the statement of affairs to disclose the business.

business matters greater than the average person. It is not credible that debtors thought the existence of an operating business, in which they invested money and from which they received income from 104 clients, was not important enough to disclose.

It is also not credible that because debtors thought the business was not yet profitable that they could make the unilateral determination that its existence need not be disclosed for scrutiny by the trustee. Regardless of whether it was currently operating at a profit and constituted a valuable asset of the estate, operation of the business was obviously relevant to income-earning potential in connection with allowance of exemptions which were at issue in the February hearing.

It is elementary that the purpose of disclosing all assets, liabilities and business operations in the schedules is so the trustee can fully investigate the business affairs of debtors, including determining whether crimes have been committed, whether objections to exemptions should be filed, and whether property should be claimed for the estate or abandoned. Without full disclosure by debtors, the trustee cannot perform his statutory duties. After observing debtors during their testimony at two hearings, the court finds without credibility the assertion that debtors may not have understood that they must disclose all information in order for the trustee to have the ability to evaluate it.

The court finds the actions of the debtors evidenced their intent to fraudulently conceal the operation of Gaines Landing from the court and the trustee, and that they decided to disclose the business interest only after it was clear that the trustee would learn of the business from the newspaper feature story.

## CONCLUSIONS OF LAW

The analysis applied to exemption questions such as this one involves three steps:

1) The bankruptcy estate of a debtor is comprised of all legal and equitable interests of the debtor pursuant to 11 U.S.C. § 541(a);

2) The interests of a debtor in a spendthrift trust shall be *excluded* from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2), thus never becoming part of the debtor's bankruptcy estate under 11 U.S.C. § 541(a);

3) The interests that have become part of the estate (those not excluded by 11 U.S.C. § 541(c)(2)) may be *exempted* from the estate pursuant to 11 U.S.C. § 522(f).

*In re Graham,* 726 F.2d 1268, 1271–1272 (8th Cir.1984); *In re Swanson,* 873 F.2d 1121 (8th Cir.1989).

The parties agree that Dr. Gaines' interest in the pension plan and debtors' interests in the IRAs are property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a), and also agree that the interests are not excluded from the estate pursuant to 11 U.S.C. § 541(c)(2). Therefore, the court is not faced with spendthrift trust issues like those in *In re Graham; In re Swanson; In re O'Brien,* 94 B.R. 583 (W.D.Mo.1988); and *In re Gallagher,* 101 B.R. 594 (Bankr.W.D.Mo.1989). The only issue before the court is the third step in the analysis—whether debtors are entitled to *exempt* their interests in the pension plan and the IRAs from the bankruptcy estate.

For reasons stated below, the court concludes that debtors' exemption of their interests in the pension plan and the IRAs will not be allowed. This determination is founded on three independent reasons: (A) exemptions should be disallowed where debtors intentionally concealed the existence and operation of a business which was an asset of the estate and which was relevant to the issue of debtors' ability to earn income for retirement; (B) debtors have not demonstrated any permissible statutory basis to allow the exemption; and (C) alternatively, even if it should be found that the first two bases are not applicable, the funds in debtors' pension plan and IRAs are not reasonably necessary for the support of debtors.

## A. CONCEALMENT OF INFORMATION

Exemptions can be disallowed if a debtor has engaged in fraudulent conduct.

*Hanson v. First National Bank,* 848 F.2d 866, 868 (8th Cir.1988); *Matter of Doan,* 672 F.2d 831, 833 (11th Cir.1982). Concealment of assets can be grounds for disallowance of exemptions. *Matter of Doan,* 672 F.2d 831, 833 (11th Cir.1982); *In re Howard,* 6 B.R. 220, 223 (Bankr.S.D.Ohio).

▬ Debtors intended to fraudulently conceal the existence of the Gaines Landing business from the trustee and the court. Evidence of this intent is shown through debtors' repeated failure to disclose this business in their Schedules and amendments, in both of their Section 341 Meetings, and in testimony given to this court on February 7. In each situation, debtors provided information under penalty of perjury, and in each case the debtors concealed their interest in Gaines Landing. The most egregious instance of this intent to conceal occurred before the court in the February 7 hearing. At that time, the court was attempting to determine the extent of debtors' exemptions under Mo.Rev. Stat. § 513.430(10)(e). One of the crucial factors under that section is evidence of the debtor's opportunities to provide future financial support for himself and his family. *In re Bartlett,* 67 B.R. 455, 457 (Bankr. W.D.Mo.1986). The operation of Gaines Landing, a bed and breakfast facility in a resort community, would be critical evidence of debtors' income-earning potential. In this case, the court has no choice but to conclude that the debtors intended to conceal this business from the court.

▬ Debtors' explanations for the failure to disclose do not provide any justification for their actions in failing to disclose the Gaines Landing business. None of the explanations offered by debtors are credible. Unlike the debtor in *In re Doan,* there was no evidence that debtors were acting upon advice of counsel in concealing Gaines Landing from the trustee and the court. Thus, no sufficient proof of circumstances has been offered that would allow the court to excuse debtors' behavior. *In re Doan,* 672 F.2d at 833–834. Debtors had numerous opportunities to disclose the

operation of Gaines Landing. Debtors' conduct shows that but for publication of the newspaper article featuring Gaines Landing, debtors never would have reported its existence as part of their bankruptcy proceedings. This conduct cannot be tolerated. For the court to allow the $50,000 exemption initially determined at the first hearing, after discovering the debtors' intentional misrepresentations and omissions under oath and under penalty of perjury, would make the court a participant in misuse of the judicial system and would constitute a stamp of approval on fraud by debtors in this case and other cases. Accordingly, the court concludes that interests in the pension plan and the IRAs are not exempt due to debtors' actual intent to fraudulently conceal assets and information from the trustee and the court.

### B. PERMISSIBLE EXEMPTIONS UNDER MISSOURI LAW

The second independent factor for disallowing debtors' exemptions in the pension plan and IRAs is that there is not a permissible Missouri exemption for these interests. In the hearing held February 7, debtors took the position that their interests in the pension plan and IRAs were exempt pursuant to Mo.Rev.Stat. § 513.430(10)(e). At the conclusion of that hearing, the court allowed debtors to exempt $50,000.00 of their interests based upon a determination that was the amount necessary for their support in the future at time of retirement, taking into account factors such as age, health and income-earning ability to replenish retirement funds prior to retirement.

Subsequent to the February 7 hearing, debtors took the position that under the precedent established by *In re Sanders,* 69 B.R. 569 (Bankr.E.D.Mo.1987) and *In re Mitchell,* 73 B.R. 93 (Bankr.E.D.Mo.1987) and the provisions of Mo.Rev.Stat. § 513.427, debtors were entitled to exempt their entire interests in the pension plan and IRAs. For the reasons stated below, the court disallows the exemptions under Mo.Rev.Stat. §§ 513.427 and 513.430(10)(e), finds that *Sanders* is inapplicable to the

present matter, and is unpersuaded by the *Mitchell* reasoning.

The provisions of Mo.Rev.Stat. § 513.427 [2] limit debtors to exemptions allowed by the laws of the state of Missouri and, except for those allowed under the Bankruptcy Code, exemptions permitted under federal law. Debtors rely upon *Sanders* and Mo.Rev.Stat. § 513.427 for the proposition that the state of Missouri may choose to grant debtors in bankruptcy exemptions that arise out of either state or federal law, and that the state of Missouri has in effect incorporated all federal exemptions (but for those listed in 11 U.S.C. § 522(d)) into the Missouri exemption scheme. This argument is based on language in § 513.427 that refers to property that is exempt from attachment or execution under state or federal law.[3]

Debtors contend that under ERISA, their pension funds are not subject to execution under federal law outside bankruptcy and, therefore, under the exemption provisions of Mo.Rev.Stat. § 513.427, pension plans and IRAs are totally exempt in bankruptcy.

Mo.Rev.Stat. § 513.427 is the enabling statute that both empowers and limits individuals who are proceeding as debtors under the Bankruptcy Code. As an enabling provision, it is not effective without reference to some other statutory provision. For example, in *In re Kendrick*, 106 B.R. 605 (Bankr.W.D.Mo.1988) debtors made a similar argument to the one presented to this court. *Kendrick* recognized the enabling and dependent nature of Mo.Rev. Stat. § 513.427 when it held:

Mo.Rev.Stat. § 513.427 is merely reinforcement of the Missouri opt-out from the Federal Bankruptcy exemptions and

thus adds nothing to Mo.Rev.Stat. § 513.430.

■ With respect to the interest in the pension plan, Debtors' position is that the provisions of Mo.Rev.Stat. § 513.427 convert the ERISA anti-alienation provisions found at 29 U.S.C. § 1056(d)(1) into a Missouri ERISA exemption that is available to Missouri individuals proceeding under Title 11. Whether debtors' argument is based on a correct statutory construction of Mo. Rev.Stat. § 513.427 is irrelevant because Mo.Rev.Stat. § 513.427 is invalid to the extent that it relates to or is connected with the provisions of ERISA. A state may not grant rights to protect pension plans that relate to ERISA. *Mackey v. Lanier Collections*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). In *Mackey*, the Supreme Court invalidated a Georgia statute protecting an ERISA welfare plan from garnishment although the intent of the state was to help effectuate ERISA's underlying purpose, stating at 108 S.Ct. at 2185:

Legislative "good intentions" do not save a state law within the broad preemptive scope of § 514(a) [29 U.S.C. § 1144(a)].

Numerous courts, including the Eighth Circuit, have held in nonbankruptcy situations that state law that refers to or that is connected with ERISA is preempted and invalid. *Pilot Life Insurance v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Baxter v. Lynn*, 886 F.2d 182 (8th Cir.1989); *Cefalu v. B.F. Goodrich*, 871 F.2d 1290 (5th Cir.1989).

Debtors' theory is that 29 U.S.C. § 1056(d)(1) exempts ERISA plans from attachment and execution under "federal law" and therefore, Missouri debtors are

---

**2.** Mo.Rev.Stat. 513.427 states: "Every person against by or against whom an order for relief is sought under Title 11, United States Code, shall be permitted to exempt from property of the estate any *property that is exempt from attachment and execution under the law of the state of Missouri or under federal law*, other than Title 11, United States Code Section 522(d), and no such person is authorized to claim as exempt the property that is specified under Title 11, United States Code." (Emphasis added.)

**3.** The Eighth Circuit has held that the term "exempt under federal law" as used in 11 U.S.C. § 522(b)(2)(B) provides protection only for programs created by federal law or receiving traditional protection from the federal government, but provides no bankruptcy exemption protection for private pensions created under ERISA. In *In re Graham*, 726 F.2d at 1274, the Eighth Circuit expressly held as a matter of law that ERISA could not be considered a federal law which provided *exemption* protection for debtors in bankruptcy. *See also, In re Goff*, 706 F.2d 574, 585 (5th Cir.1983).

authorized to use this federal law exemption pursuant to the language in Mo.Rev. Stat. § 513.427. Although there is not a specific reference in Mo.Rev.Stat. § 513.427 to ERISA, this argument is based upon the conclusion that Mo.Rev.Stat. § 513.427 is dependent upon and connected with ERISA. Based on the precedent established in the Supreme Court and the reasoning applied by subsequent lower courts, the court concludes that Mo.Rev.Stat. § 513.427 cannot and does not create a Missouri ERISA exemption.

The provisions of Mo.Rev.Stat. § 513.430(10)(e)(c) [4], which provide for exemption of certain pension funds to the extent necessary for support, as discussed later in this opinion, specifically designate those pensions or other similar plans that are exempt from attachment and execution in the state of Missouri. Pursuant to the same reasoning that invalidates Mo.Rev. Stat. § 513.427, § 513.430(10)(e)(c) is also invalid to the extent that it refers, relates or applies to ERISA, thus making it unnecessary to reach the issue of application of the terms of this statute to debtors' financial situation. This Missouri statutory provision purports to provide exemption protection only to certain pensions based upon compliance with federal tax provisions; pensions or other plans that are not qualified under 26 U.S.C. §§ 401(a), 403(a), 403(b), 408 or 409 are not exempt from execution and attachment in Missouri.[5] These federal tax provisions describe the requirements necessary for a plan to enjoy preferred ERISA

status. Federal law prohibits any attempt by the Missouri legislature to incorporate ERISA plans into its exemption scheme, regardless of good intentions. *Mackey, supra.* Therefore, the analysis of Mo.Rev. Stat. § 513.430(10)(e)(c) is no different than that applied to Mo.Rev.Stat. § 513.427; neither section can refer or relate to ERISA. Indeed, as stated in *In re Brown*, 95 B.R. 216, 218–219 (Bankr.N.D.Okla.1989):

> The exemptions provided in Tit. 60 of the Oklahoma Statutes make a debtor's interest in a pension plan exempt from garnishment or the claims of creditors if such a plan cannot be alienated, encumbranced or levied upon. ERISA provides unequivocally that in order for the plan to be qualified the benefits provided under the plan may not be assigned or alienated. The Internal Revenue Code also provides that in order to qualify as an ERISA trust the plan must provide that the benefits are nonalienable or nonassignable. It is clear that Tit. 60, supra., refers to and is connected with ERISA qualified pension benefit plans and are, therefore, also void because of the ERISA preemption clause. *In short, states cannot make the debtor's interest in these plans exempt; only Congress can do this.* (Emphasis added.)

In addition to *Brown*, this reasoning is supported by a majority of the courts reviewing state exemption provisions that relate to or incorporate ERISA. *In re Seigel*, 105 B.R. 556 (D.Ariz.1989, J. Carroll); *In re Flindall*, 105 B.R. 32 (Bankr.Ariz.1989, J. Mooreman); *In re McLeod*, 102 B.R. 60 (Bankr.S.D.Miss.1989).

---

**4.** "The following property shall be exempt from attachment and execution to the extent of any person's interest therein:

    \*    \*    \*    \*    \*    \*

(10) such person's right to receive: ...

(e) A payment under a stock bonus, pension profit sharing, annuity or similar plan contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of such person and any dependent of such person unless:

    \*    \*    \*    \*    \*    \*

c. Such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408 or

409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408 or 409)."

**5.** The express reference to these ERISA-related tax provisions in Mo.Rev.Stat. 513.430(10)(e) undercuts debtors' argument that ERISA plans were intended to be wholly exempt under a blanket exemption provided by Mo.Rev.Stat. 513.427, as discussed earlier. Application of both statutes to ERISA plans is not possible, and to apply a blanket exemption from the general preamble statute, 413.427, would render meaningless the more specific statute, 513.430(10)(e), which expressly references an exemption for funds in ERISA plans based on debtors' need for support.

Therefore, debtors' pension plan interests cannot be exempted pursuant to Mo. Rev.Stat. § 513.430(10)(e)(c), regardless of the necessity of the funds for debtors' support, because the Missouri exemptions are preempted by federal ERISA laws.

■ Debtors also rely on *In re Sanders,* 69 B.R. 569 (Bankr.E.D.Mo.1987) and *In re Mitchell,* 73 B.R. 93 (Bankr.E.D.Mo. 1987) in support of the exemption of their interests in the pension plan and IRAs. This court's conclusion is not inconsistent with *Sanders,* which involved the trustee's objections to exemption of the debtor's earned but unpaid wages that had accrued at the time of bankruptcy. The trustee's primary argument was that Mo.Rev.Stat. § 513.427 limited debtor to only those exemptions expressly listed in Chapter 513, Mo. Rev.Stat. *Sanders* held that other statutory exemptions outside the confines of Chapter 513 were available to the debtor. *Sanders,* 69 B.R. at 571–573. However, *Sanders* did not hold that Mo.Rev.Stat. § 513.427 provides a blanket exemption that can be applied without reference to other statutory provisions. Accordingly, the court concludes that even if *Sanders* is a correct recitation of Missouri law, it is not applicable to the present matter because debtors have relied upon a statutory provision that is prohibited under United States Supreme Court precedent relating to ERISA preemption and have not provided any other applicable statutory provision in connection with Mo. Rev.Stat. § 513.427.[6]

■ Debtors also rely on the *Mitchell,* which *Mitchell* allowed the debtor to exempt an unliquidated personal injury cause of action under Mo.Rev.Stat. § 513.427. *Mitchell* concluded that *Sanders* allowed exemptions under Mo.Rev.Stat. § 513.427 that were not limited by other statutory provisions of Missouri law, and reasoned

that unliquidated personal injury causes of action were free from attachment and assignment and thus could be exempted from the bankruptcy estate. *Mitchell* essentially held that a type of blanket exemption existed for Missouri debtors in bankruptcy who hold unliquidated personal injury causes of action.

Debtors rely on *Mitchell* for the proposition that because under federal law, i.e. ERISA, their interests in the pension plan and IRAs would be exempt from attachment and execution outside of bankruptcy, they should be afforded the same treatment regardless of the filing of debtors' petition. For the reasons stated below, the court declines to follow *Mitchell.*

First, as stated above, the court concludes that the *Sanders* decision does not hold that a blanket exemption is given to Missouri debtors under Mo.Rev.Stat. § 513.427. It is clear that *Sanders* required the debtor to show a specific state or federal provision *along with* the enabling provisions of Mo.Rev.Stat. § 513.427 before property could be exempted. As explained above, Mo.Rev.Stat. § 513.427 is an enabling provision that allows a Missouri resident in bankruptcy to exempt property that is not subject to attachment or execution. In and of itself, Mo.Rev.Stat. § 513.427 does not define the type of property that is free from attachment and execution, but rather, depends upon other provisions of state and federal law to provide that status. Thus, unlike *Mitchell,* this court concludes that the provisions of Mo. Rev.Stat. § 513.427 require an additional statutory provision granting property exempt status from attachment and execution before the court may allow the exemption to a Missouri debtor proceeding under Title 11.

■ *Mitchell,* which held exempt an unliquidated personal injury cause of action under 513.427, was decided by the Bank-

---

**6.** Given the "opt-out" exemption option of the Bankruptcy Code, the exercise of the "opt-out" and implementation of exemption schemes by the states, development of court decisions involving the Bankruptcy Code (e.g., *Graham* and *Swanson*) and the preemptive nature of ERISA

(i.e., *Mackey*), it appears that only Congress, and not the states, may have the power to protect debtor's interests in ERISA plans. *Accord, In re Brown,* 95 B.R. at 218. Clearly, the states' attempts to exempt ERISA plans run afoul of *Mackey.*

ruptcy Court for the Eastern District of Missouri. It was affirmed by the Eighth Circuit in an unpublished *per curiam* decision. *In re Mitchell*, No. 87–2633 (8th Cir. June 24, 1988) [855 F.2d 859 (table)]. (8th Cir.1988.) The unpublished Eighth Circuit affirmance of the *Mitchell* decision is binding only on the parties and cannot be binding precedent pursuant to Eighth Circuit Rule of Appellate Procedure 8(i) and Eighth Circuit Rule of Appellate Procedure Appendix 2.3.[7] *In re Leimer*, 724 F.2d 744, 745–46 (8th Cir.1984). Since publication of *Mitchell*, many debtors have attempted to expand its holding beyond the original facts concerning an unliquidated personal injury cause of action to exempt many other types of property including, all types of unliquidated causes of action, such as lender liability actions,[8] and as here, debtors' substantial interests in IRAs and an ERISA pension plan. In light of the non-binding effect of the bankruptcy court opinion, affirmed without published opinion by the Eighth Circuit, and the recent development of the ERISA preemption cases cited above, it is appropriate to re-examine *Mitchell* at this time.

*Mitchell* reasoned that the debtor's interest was exempt because the unliquidated personal injury cause of action was not subject to attachment by creditors, nor could it be assigned by debtor. *Mitchell* supported this reasoning by determining that the exempt treatment of the cause of action would allow debtors and non-debtors to share the same benefits. The court questions these premises underlying this aspect of the *Mitchell* holding, and further concludes that rather than treating debtors and non-debtors alike, the true effect of *Mitchell* is to grant debtors a greater right than that which is available to non-debtors.

The reasons for granting exemption rights to debtors in bankruptcy have been summarized as follows:

1) To provide the debtor with property necessary for his physical survival; 2) To protect the dignity and the cultural and religious identity of the debtor; 3) To enable the debtor to rehabilitate himself financially and earn income in the future; 4) To protect the debtor's family from the adverse consequences of impoverishment; and 5) To shift the burden of providing the debtor and his family with minimal financial support from society to the debtor's creditors.

Resnick, *Prudent Planning or Fraudulent Transfer*, 31 Rutgers L.R. 615, 621 (1988). The policy of the exemption statues is to prevent the loss of the necessities of life. *Forsberg v. Security State Bank*, 15 F.2d 499 (8th Cir.1926).

The reasoning relied upon in *Mitchell* appears to be based on the timing of the bankruptcy filing rather than a determination that is consistent with these factors. It is true that personal injury claims cannot be attached by a creditor of the claimant until such time as the cause becomes a certain debt owing to the debtor.[9] However, this is because it is legally impossible to attach a contingent liability,[10] not because the cause of action is one of the debtor's basic life ne-

---

**7.** Rule 8(i) provides: "No party may cite an opinion that was not intended for publication by this or any federal or state court, except when the cases are related by virtue of an identity between the parties or the causes of action. *See* Plan for Publication of Opinions, § 3.

Appendix 2, Plan for Publication of Opinions, § 3 provides, in part: "Unpublished opinions, since they are unreported and not uniformly available to all parties, may not be cited or otherwise used in any proceedings before this 'court or any district court in this circuit' except when the cases are related by virtue of an identity between the parties or the causes of action."

**8.** See *In re Jones*, 102 B.R. 730 (Bankr.W.D.Mo. 1989), where debtors contended a cause of ac-

tion against a bank for alleged fraud in making a loan should be exempt, and not subject to the claims of the bankruptcy trustee, thus giving the debtors a windfall and depriving creditors of the only significant asset in the estate if debtors' theory were followed.

**9.** 6 Am.Jur.2d, Attachment and Execution, § 126, 132. However, the application of this rule depends upon the interpretation of the relevant state's attachment statute. *See, Woody's Olympia Lumber v. Roney*, 9 Wash.App. 626, 513 P.2d 849 (1973) (Medical malpractice claim was subject to attachment under Washington law).

**10.** *Raithel v. Hamilton–Schmidt*, 48 S.W.2d 79, 81–82 (Mo.App.1932).

cessities. Furthermore, there are exceptions to this rule in that certain contingent interests can be attached and executed upon in Missouri. *ReMax of Blue Springs v. Vajda*, 708 S.W.2d 804, 805 (Mo.App.1986); *Ragan v. Looney*, 377 S.W.2d 273, 281 (Mo.1964). Although the assignability of property is not an element in determining whether property may be exempted under Mo.Rev. Stat. § 513.427, an individual may assign a personal injury claim which has been reduced to judgment and all other unliquidated non-personal injury causes of action. *Gold Medal Products v. Love*, 766 S.W.2d 759 (Mo.App.1989); *Beall v. Farmers' Exchange Bank of Gallatin*, 76 S.W.2d 1098 (Mo.1934). Under both of the premises relied upon by *Mitchell* (that personal injury causes of action cannot be attached and that they cannot be assigned), the debtor would not be able to protect the judgment from his creditors if it had been rendered prior to the filing of bankruptcy.

The real effect of *Mitchell* is to grant greater rights to debtors in bankruptcy than to non-debtors, rather than to treat them equally. The non-debtor holding an unliquidated personal injury cause of action will eventually reduce that claim to judgment of a settlement and that once that happens, the judgment is subject to the claims of creditors. On the other hand, the debtor in bankruptcy, if allowed the *Mitchell* blanket exemption, would reduce the personal injury claim to judgment after the filing of his bankruptcy petition. Be-

cause he would not be liable for any of his debts after his bankruptcy discharge, he would take the judgment free and clear of the claims of his creditors.[11] Thus, the debtor who is allowed a blanket exemption under *Mitchell* would receive more than the similarly situated non-debtor. This court does not believe the Missouri legislature intended to grant greater exemptions to debtors in bankruptcy than to individuals who do not file bankruptcy. The opt-out and enabling statute, Mo.Rev.Stat. § 513.427, was intended only to give bankruptcy debtors in Missouri the same state law exemptions which individuals outside bankruptcy would receive.

Accordingly, the court declines to follow *Mitchell* because the property at issue here, $231,125 in funds, is not the type of property that is consistent with providing debtors with life's necessities. Furthermore, under *Mitchell* the contingent claims held by a debtor are not protected from attachment and execution based upon a determination by the Missouri legislature that such property is necessity of life, but rather, based solely upon the time at which the bankruptcy petition is filed, and as such, the underlying basis for the *Mitchell* holding is questionable. Finally, the court concludes that the true effect of *Mitchell* is to grant bankruptcy debtors greater rights than non-debtors, and therefore, it effectively allows debtors a head start rather than the fresh start envisioned by the Bankruptcy Code.

---

**11.** The following hypothetical illustrates the disparate treatment. Two individuals, A and B, each have causes of action for personal injuries. Both A and B have no other significant assets. Dr. Jones provided $100,000 in medical services to each in treatment of their personal injuries. Dr. Jones has claims against both A and B for the services he provided. Both decline to pay the medical bills, so he sues them.

When A receives Dr. Jones' complaint and summons, he files a Chapter 7 bankruptcy, claiming his unliquidated personal injury cause of action as exempt. Since A has no other significant assets, his creditors receive zero distribution and he receives a discharge of his debts plus the right to pursue his exempt personal injury action. B does not file bankruptcy. Both individuals are successful in their actions and obtain one million dollar judgments on their personal injury claims.

Dr. Jones cannot collect from A, even though A now has a one million dollar judgment, because Dr. Jones' claim was discharged in Chapter 7 and A's personal injury claim was exempt. Dr. Jones can collect his $100,000 debt from B because B did not file bankruptcy, so after his personal injury claim is reduced to judgment, it is subject to the claims of creditors and is not exempt under Missouri exemption statutes. In summary, if *Mitchell* is followed, A, the debtor in bankruptcy, receives a windfall, taking his judgment free of the claims of all creditors, including Dr. Jones, who is prevented from collecting due to the bankruptcy discharge, whereas B, the non-debtor, takes his judgment subject to the claims of all its creditors, including Dr. Jones. Thus, the effect of *Mitchell* is to provide more to the debtor in bankruptcy compared to the similarly situated non-debtor.

## C. EXEMPTION UNDER MO.REV. STAT. § 513.430(10)(e): "REASONABLY NECESSARY" FOR SUPPORT

The court has already determined that exemption is not possible under 513.-430(10)(e) because ERISA plans may not be the subject of or affected by any state statutes due to preemption by federal law. However, in the event that a higher court should determine that debtors are not disqualified from seeking exemption of pension funds due to fraudulent concealment of information and that ERISA plans may be the subject of Missouri exemption statutes, the court makes the following alternative findings after analyzing debtors' financial situation in light of the terms of the exemption statute. Assuming that Mo. Rev.Stat. § 513.430(10)(e) allows an exemption that is not preempted by 29 U.S.C. § 1144, the court in its discretion must determine whether the funds at issue are "reasonably necessary" for support of the debtors.[12] Based on evidence presented at both the February 7 and August 9 hearings, the court concludes that debtors' interests in the plan and IRAs are not reasonably necessary for their support.

This court referred to the following guidelines for determining whether pension plans are reasonably necessary for the support of a debtor pursuant to Mo. Rev.Stat. § 513.430(10)(e) in *In re Bartlett*, 67 B.R. 455, 457 (Bankr.W.D.Mo.1986):

1) Debtor's present and anticipated living expenses;[13]
2) Debtor's present and anticipated income from all sources;
3) Age of Debtor and dependents;
4) Health of the debtor and all dependents;
5) Debtor's ability to work and earn a living;
6) Debtor's job skills, training, and education;
7) Debtor's other assets, including exempt assets;
8) Liquidity of other assets;
9) Debtor's ability to save for retirement;
10) Special needs of debtor and dependents; and
11) Debtor's financial obligations, e.g., alimony or support payments.

These guidelines are reviewed within the context that exemptions are not intended to

**12.** Mo.Rev.Stat. § 513.430(10)(e)(c) is ambiguous in its application to IRAs. The first portion of the statute contains a general description of the types of payments that are exempt from attachment and execution. Standing alone, it appears that IRAs would not be consistent with and would not be categorized with stock bonus, pension, profit-sharing, and annuity plans. Indeed, these plans involve complex transactions with numerous contractual and fiduciary relationships among various parties, and with restrictions on access to funds, whereas an IRA is a simple savings device which grants certain tax benefits to an individual for savings deposits made by the individual in an IRA account.

IRA funds are not subject to the restrictions that ERISA and tax laws impose on other pension plans and there is no requirement that the funds be set aside until retirement. An IRA owner can withdraw the funds at any time and spend them for any reason so long as he is willing to pay the current taxes plus a 10% penalty on the withdrawn funds. For example, in a bankruptcy setting, even if the funds are exempt under state statute, after the bankruptcy proceeding the debtor is not compelled to retain the funds for retirement, but can withdraw the funds and use them without

restriction as to amount or time for any purpose—even for a non-retirement purpose such as a trip to Las Vegas. The funds are, for practical purposes, not much different than a regular savings account which is not exempt.

However, the second part of Mo.Rev.Stat. § 513.430(10)(e)(c) creates by implication an interpretation that IRAs may be exempted. The second portion of this section specifically describes plans or contracts that shall not be exempt from execution and attachment. Excluded from exemption protection are plans and contracts that do not comply with 26 U.S.C. § 408, which contains the statutory requirements for IRAs. Therefore, it must be assumed that the Missouri legislature intended the reach of the first portion of Mo.Rev.Stat. § 513.430(10)(e)(c) to include IRAs.

**13.** As to the first guideline, it is noted that present need is relevant only if the funds are presently accessible by debtor outside bankruptcy, such as funds in an IRA or funds which a debtor could receive by terminating involvement in a plan. *See, e.g. In re Swanson*, 873 F.2d 1121 (8th Cir.1989), in which debtor could obtain the funds in a state teachers' retirement plan by terminating employment.

insure against all future contingencies that could possibly lower the debtor's standard of living, and that if the funds are accessible outside of bankruptcy, the debtor must show a present need for the funds. *Bartlett*, 67 B.R. at 457.

 At the time of hearings of this matter, debtors' monthly income exceeded their monthly expenses by more than $700. Dr. Gaines has been a licensed dentist for more than thirty years, evidencing an ability to work and a high level of job skills, training and education. Dr. Gaines is 58 years old; there was no evidence presented that there is an age limitation on his ability to remain a licensed dentist in the state of Missouri. Dr. Gaines is the sole shareholder of Ben P. Gaines, D.D.S., Inc., which pays him the monthly salary of $3,000. Although debtors did not place a value on the stock of Ben P. Gaines, D.D.S., Inc., it certainly has value if debtors choose to sell the dental practice. In addition, there do not appear to be any limitations on Dr. Gaines' employment in other fields of endeavor. Mrs. Gaines, who is 49 years old, has started a new business—Gaines Landing. At this point in time, debtors are not able to project the long term impact that Gaines Landing will have on their income. However, the fact that debtors started a new business at this point in their lives shows that debtors have the ability to continue to earn substantial income and rebuild their retirement funds. Additionally, the fact that in the first few months of operation debtors lodged 104 guests indicates the potential for earning significant income from this bed and breakfast business in a resort community. In certain circumstances debtors' age would not allow a sufficient time in which to rebuild a retirement fund. This case is not one of those circumstances since debtors have substantial discretionary income and earning power. Debtors have not presented any evidence of health problems that would cause them to be unemployed.

Given these factors and the lack of evidence of debtors' present need for the benefits, debtors' interests in the pension plan and IRAs are not exempt under Mo.Rev. Stat. § 513.430(10)(e). At the first hearing in February, the court found that $50,000 was exempt as necessary to assist in funding debtors' retirement years. However, that conclusion is no longer appropriate, taking into account the evidence of debtors' ability to earn additional income by operating a busy bed and breakfast business out of their home in a popular resort community, which information was concealed at the first hearing.

WHEREFORE, IT IS HEREBY ORDERED that the trustee's objections to debtors' exemptions are sustained; it is further

ORDERED that debtors, their employees, agents, or assigns shall turn over the proceeds of debtors' interests in the pension plan and IRAs, plus all interest accrued since the date of the bankruptcy petition, within 10 days of the entry of this Order; it is further

ORDERED that the trustee shall pay from the non-exempt pension and IRA funds all tax obligations and penalties arising as a result of the turnover ordered herein.