Joyce Ann SCARLETT, Appellant,

v.

Gary D. BARNES, Trustee, Appellee.

No. 90–0381–CV–W–3.

United States District Court,
W.D. Missouri, W.D.

Nov. 26, 1990.

Jamie K. Lansford, Benson & McKay, Kansas City, Mo., for appellant.

Gary D. Barnes, Linde, Thomson, Langworthy, Kohn & Van Dyke, P.C., Kansas City, Mo., for appellee.

## OPINION MEMORANDUM AND ORDER

ELMO B. HUNTER, Senior District Judge.

This is an appeal from the Bankruptcy Court's Order and Judgment sustaining the Trustee's objection to appellant Scarlett's claim of exemption to a cause of action for legal malpractice. Scarlett filed a petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 301, on November 19, 1984. The Bankruptcy Court filed a Discharge of Debtor on February 28, 1985, and a Final Decree on June 6, 1985. More than four years later, on November 15, 1989, Scarlett filed a motion to reopen the case for the purpose of disclosing a cause of action for legal malpractice which had already accrued at the time of her discharge.[1]

The Bankruptcy Court reopened the case and Scarlett filed amended schedules disclosing the existence of the cause of action and claiming it as exempt property. The Trustee objected to the claim of exempt property, and the Bankruptcy Court held a hearing on February 12, 1990. The court concluded that the cause of action for legal malpractice is not a purely personal one, is assignable under Missouri law and is, therefore, not exempt from attachment and execution.

The parties agree that the cause of action is property of the bankruptcy estate because it accrued prior to the issuance of the Final Decree discharging Scarlett.[2] The parties disagree, however, as to whether Scarlett's interest in the cause of action may be exempted from the bankruptcy estate pursuant to Mo.Rev.Stat. § 513.427. Missouri, by enacting § 513.427, "opted out" of the federal exemption scheme and adopted instead those exemptions existing under Missouri law. Specifically, § 513.427 makes exempt, for bankruptcy purposes, "any property that is exempt from attachment and execution under the law of the state of Missouri...." Thus, the narrow question before the Court is whether Scarlett's right of action for legal malpractice is "exempt from attachment and execution under the law of the state of Missouri."[3]

The court below, in this case and in at least one previous decision, has concluded that a cause of action, if assignable, is subject to attachment and execution under Missouri law. *In re Scarlett*, No. 84-003605-W-7-FWK (Bankr.W.D.Mo. Feb. 16, 1990) (order denying claim of exemption); *see also In re Jones*, 102 B.R. 730, 732 (Bankr.W.D.Mo.1989) ("the lender liability cause of action held by Debtors is assignable, and thus, not exempt under Missouri law"); *but cf. In re Gaines*, 106 B.R. 1008, 1019 (Bankr.W.D.Mo.1989) ("the

---

1. Scarlett filed the legal malpractice suit on March 15, 1985, prior to the issuance of the Bankruptcy Court's final decree.

2. *See In re Graham*, 726 F.2d 1268, 1271 (8th Cir.1984) ("'all legal and equitable interest of the debtor in property' become property of the estate"); *In re Cottrell*, 876 F.2d 540 (6th Cir. 1989) (personal injury action, though unassignable under state law, was property of the bankruptcy estate); *and Sierra Switchboard Co. v. Westinghouse Electric Corp.*, 789 F.2d 705, 709 (9th Cir.1986) ("[r]egardless of whether a personal injury claim is transferable or assignable under state law, such claims become part of the bankruptcy estate"). Following *Cottrell* and *Si-*

*erra Switchboard*, the Court rejects the suggestion of *In re Jones*, 102 B.R. 730, 732 n. 3 (Bankr.W.D.Mo.1989), that non-assignable causes of action are not part of the bankruptcy estate.

3. Missouri has enumerated, at Mo.Rev.Stat. § 513.430, property exempt from attachment and execution. But, as was noted in *In re Sanders*, 69 B.R. 569, 572 (Bankr.E.D.Mo.1987), the fact that an exemption may not be found in § 513.430 "is of little consequence since there are numerous other undisputed exemptions not listed in that section or in any other section of Chapter 513."

assignability of property is not an element in determining whether property may be exempted under Mo.Rev.Stat. § 513.427"). The Court agrees that whether a cause of action is exempt from attachment and execution depends on whether it is assignable.

■ Most states, relying on the theory that unliquidated damages are contingent, do not permit creditors to reach claims for unliquidated damages by attachment or garnishment. 6 Am.Jur.2d *Attachment and Garnishment* § 127. No Missouri court has squarely addressed the subject, but Missouri courts have followed, for more than a century, a similar rule that a "debt for which an attachment may issue must possess an actual character and not be merely possible, and dependent upon a contingency which may never happen." *Hearne v. Keath*, 63 Mo. 84, 89 (1876); *see also State ex rel. Government Employees Ins. Company v. Lasky*, 454 S.W.2d 942, 950 (Mo.Ct.App.1970) (an insurer's contractual obligation to defend insured was not a "debt" owing to the insured and was not subject to attachment). Thus, it appears certain that Missouri would join those jurisdictions which have held that a claim or cause of action for unliquidated damages is not subject to traditional attachment and execution.

■ Despite the fact that a debtor's claim for unliquidated damages is beyond usual means of attachment and execution, such a claim is not necessarily beyond all reach of legal process. Missouri courts have long recognized the equitable remedy of the creditor's bill. *Shockley v. Harry Sander Realty Co.*, 771 S.W.2d 922, 924–25 (Mo.Ct.App.1989). A creditor's bill is a remedy which is available when "neither execution nor garnishment is effective to reach intangible or equitable assets of the debtor, even when those assets are not subject to exemption." Dobbs, *Remedies* § 1.3 at p. 11. It is clear, therefore, that a claim for unliquidated damages is not *ipso*

*facto* exempt simply because it is not subject to the traditional means of attachment and execution. There is no reason to believe that by enacting § 513.427 the Missouri legislature intended to create an exemption for intangible and equitable assets that cannot be reached by ordinary legal process even though those assets may be within reach of a creditor's bill.

■ While Missouri courts have not had occasion to address the scope of the § 513.427 phrase "attachment and execution," this Court construes § 513.427 to provide an exemption for property that is not only not subject to attachment and execution (in the technical, narrow sense of the phrase), but that is also not subject to a creditor's bill. A strict interpretation of § 513.427—that "attachment and execution" means "attachment and execution" and no more or less—would be unnecessarily hypertechnical and would serve no legitimate purpose. Such an interpretation of § 513.427 would frustrate the clear intention of the legislature to permit an exemption for property which is beyond the reach of legal process. Thus, while Scarlett's malpractice claim is not subject to attachment and execution because it, like all tort claims, is unliquidated, whether it is exempt depends on whether it is subject to a creditor's bill.

■ Again the Court is faced with a question of first impression under Missouri law. Other jurisdictions have held that personal tort claims may not be reached by a creditor's bill, but that tort claims arising for injury to property are subject to a creditor's bill. *Hudson v. Plets*, 11 Paige 180, 183–84 (N.Y.Ch.1844). *See also* 21 Am.Jur.2d *Creditor's Bills* § 57; 21 C.J.S. *Creditor's Suits* § 29. The distinction rests on the assignability of the claim. Assignable claims are subject to a creditor's bill, but nonassignable claims—claims which are personal in nature—cannot be reached by a creditors bill.[4] Thus, if a

---

4. Whether or not a lawsuit has actually been filed asserting a personal claim is immaterial. Until a judgment has been rendered in favor of the debtor, all the debtor has is an unassignable cause of action—even if a verdict in favor of the

debtor has been returned. *Chuning v. Calvert*, 452 S.W.2d 580, 584 (Mo.Ct.App.1970). *See also* 21 C.J.S. *Creditor's Suits* § 29. Once the unassignable claim is reduced to a money judgment,

debtor's cause of action is not assignable, a court cannot coerce the debtor, by means of a creditor's bill, to assign the cause of action to his creditor. Under Missouri law, a tort claim "in which the wrong is regarded as one to the person rather than an injury affecting the estate or property" is not assignable. *State ex rel. Park Nat. Bank v. Globe Indemnity Co.*, 332 Mo. 1089, 61 S.W.2d 733, 736 (1933). Logic dictates, then, that Missouri would follow those jurisdictions which have held that personal tort claims are not subject to a creditor's bill.

█ In the present case, whether or not Scarlett's legal malpractice claim is an assignable claim subject to a creditor's bill and thus not exempt, depends on whether the claim is characterized as a personal tort claim. If so, it may be exempted from the bankruptcy estate. *See In re Mitchell*, 73 B.R. 93 (Bankr.E.D.Mo.1987) *aff'd mem.* 855 F.2d 859 (8th Cir.1988) (holding that personal injury claims are not subject to attachment and execution and are therefore exempt property).[5] The court below

held that the claim is not a personal tort claim and is therefore not exempt.

In order to determine whether Missouri courts would classify legal malpractice as a non-assignable, personal tort claim, it is necessary to understand why personal tort claims are not assignable. Under early common law, almost no cause of action was assignable. *Forsthove v. Hardware Dealers Mutual Fire Insurance Co.*, 416 S.W.2d 208, 214 (Mo.Ct.App.1967). The rule was that because a cause of action did not survive the death of the complaining party, it could not be assigned. *Id.* at 214–15. As the law of survivability evolved, so did the law of assignability. Nevertheless, Missouri, like other jurisdictions, retained its rule that personal tort claims are not assignable even if survivable. *Id.* The rationale for retaining this rule of non-assignability for personal tort claims is one of public policy prohibiting the "traffic[king] in law suits for pain and suffering." *Id.* at 217 (citing *Rice v. Stone*, 83 Mass. 566 (1861)). It is clear, however, that Missouri's public policy is broader than that stated by the *Rice* court,

---

then the judgment itself may be assigned, and it is subject to attachment and execution.

5. An alternative ground upon which the *Mitchell* court relied in support of its holding is that debtors and non-debtors should be treated alike—the personal injury claims of both should be beyond the reach of creditors. However, as the court noted in *In re Gaines*, 106 B.R. 1008, 1019 n. 11 (Bankr.W.D.Mo.1989), debtors and non-debtors are not treated alike under this rule. Once a nondebtor reduces his claim to a money judgment against his tortfeasor, the judgment is not beyond the reach of his creditors. A debtor, on the other hand, who is discharged in bankruptcy prior to reducing his personal injury claim to a judgment, has insulated his judgment from the reach of his creditors. Recognizing this disparity, the *Gaines* court—laboring under the misconception that claims for unliquidated damages are "legally impossible to attach"—concluded that the *Mitchell* court had created an unjustifiable windfall for debtors based merely on the timing of the bankruptcy filing. *Id.* at 1018. Thus, the *Gaines* court declined to follow *Mitchell*.

While the court in *Gaines* correctly identified the disparate treatment that results from the fact that personal injury claims are not subject to attachment and execution, its refusal to follow *Mitchell* was itself dictum inasmuch as *Gaines* did not involve a claim of exemption for *any* kind of cause of action. Moreover, the

ultimate reason for refusing to follow *Mitchell* was based on the erroneous assumption that causes of action for unliquidated sums are beyond attachment, not because they are exempted from attachment, but because it is simply impossible to attach such claims. As the Court has discussed, however, such claims for unliquidated damages are not necessarily exempt from attachment and execution because they are subject to a creditor's bill as long as they are not personal claims. Thus, while the *Gaines* court's observation of the disparity is accurate, the conclusion it draws—that *Mitchell* is wrong—is unsupportable.

Although the *Gaines* court may question the wisdom of the policy which exempts from the bankruptcy estate personal claims for unliquidated damages, neither that court nor this Court is free to disregard Missouri law which makes such claims exempt property. The *Mitchell* holding, which the Eighth Circuit affirmed per curiam without opinion, is a sound interpretation of Missouri law. The analysis in *Mitchell* however, was abbreviated insofar as it failed to recognize that non-personal, unliquidated claims are subject to the equitable equivalent of execution—the creditor's bill. Thus, to the extent that *Mitchell* indicates that *any* unliquidated claim is exempt property, this Court would disagree.

for it prohibits the assignment of causes of action " 'for torts for personal injuries, and for wrongs done to the person, the reputation, or the feelings of the injured party, and those based on contracts of a purely personal nature, such as promises of marriage.' " *State ex rel. Park Nat. Bank v. Globe Indemnity Co.*, 332 Mo. 1089, 61 S.W.2d 733, 736 (1933) (citing 2 R.C.L. 596, § 3).[6]

Several jurisdictions have prohibited the assignment of legal malpractice claims, citing public policy as the reason for the prohibition. *See, e.g., Schroeder v. Hudgins*, 142 Ariz. 395, 690 P.2d 114 (Ct.App. 1984); *Goodley v. Wank & Wank, Inc.*, 62 Cal.App.3d 389, 133 Cal.Rptr. 83 (Ct.App. 1976); *Aaron v. Allstate Insurance Co.*, 559 So.2d 275 (Fla.Dist.Ct.App.1990); *Brocato v. Prairie State Farmers Insurance Association*, 166 Ill.App.3d 986, 117 Ill. Dec. 849, 520 N.E.2d 1200 (Ill.App.Ct.1988); *Moorhouse v. Ambassador Insurance Co.*, 147 Mich.App. 412, 383 N.W.2d 219 (Ct. App.1985); *Chaffee v. Smith*, 98 Nev. 222, 645 P.2d 966 (1982). *See also Gunn v. Mahoney*, 95 Misc.2d 943, 408 N.Y.S.2d 896, 900 (Sup.Ct.1978) (cause of action against attorney was transferable insofar as it was based on breach of contract but not transferable insofar as it sounded in tort for malpractice). A few jurisdictions, however, have permitted the assigning of such claims, at least under some circumstances. *Hedlund Mfg. Co. v. Weiser, Stapler & Spivak*, 517 Pa. 522, 539 A.2d 357 (1988); *Collins v. Fitzwater*, 277 Or. 401, 560 P.2d 1074, 1078 (1977); *Picadilly, Inc. v. Raikos*, 555 N.E.2d 167 (Ind.Ct.App. 1990); *Thurston v. Continental Casualty Company*, 567 A.2d 922 (Me.1989).

If legal malpractice is to be an unassignable cause of action; it is not simply because it can be classified as a personal claim. As one Illinois court has recognized, legal malpractice cannot be neatly pigeonholed as either a "personal" or "nonpersonal" tort. *Christison v. Jones*, 83 Ill.App.3d 334, 39 Ill.Dec. 560, 405 N.E.2d 8 (App.Ct.1980). That court wrote:

> With its unique aspects, the tort of legal malpractice does not fit well into categories previously established for determining assignability. It has aspects of the tort to property, inasmuch as the injuries resulting are to property interests, and it has highly personal aspects without being a personal injury tort. We find that the personal nature of the relationship and the duty imposed upon the attorney, coupled with public policy considerations surrounding that relationship and any potential assignability of breaches thereof (giving rise to causes of action in legal malpractice) lead us to conclude that the legal malpractice claim is not subject to assignment.

39 Ill.Dec. at 563, 405 N.E.2d at 11. The best articulation of the public policy considerations forbidding the assignment of legal malpractice is found in *Goodley v. Wank & Wank, Inc.*, 62 Cal.App.3d 389, 133 Cal. Rptr. 83 (Ct.App.1976), where the court wrote:

> The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connections with the as-

---

**6.** The Trustee has cited *Eastern Atlantic Transportation and Mechanical Engineering, Inc. v. Dingman*, 727 S.W.2d 418 (Mo.Ct.App.1987), which held that a claim for punitive damages against an escrow agent for breach of fiduciary duty is assignable. The escrow agent breached his fiduciary duty by failing to collect and distribute funds as he was obligated to do by the terms of the escrow agreement. The court stated that "[t]he test used to determine whether a cause of action is assignable is whether or not it would survive to the personal representative." *Id.* at 423. The *Eastern Atlantic* court's assigna-

bility-survivability test (which is the quite old common law test) would lead to the conclusion that even claims for personal injuries are assignable because such claims survive, by statute, the death of the tort victim. Mo.Rev.Stat. § 537.020. As previously discussed, however, in *Globe Indemnity* the Missouri Supreme Court prohibited the assignment of such claims for policy reasons which are not repudiated by the enactment of § 537.020. While the result reached in *Eastern Atlantic* may be sound, that court's analysis does not square with well established Supreme Court precedent.

signor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandising such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. . The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.

62 Cal.App.3d at 397, 133 Cal.Rptr. at 87.

In light of Missouri's prohibition of the assignment of causes of action " 'for torts ... for wrongs done to the person, the reputation, or the feelings of the injured party, and those based on contracts of a purely personal nature, such as promises of marriage,' " *State ex rel. Park Nat. Bank v. Globe Indemnity Co.*, 332 Mo. 1089, 61 S.W.2d 733, 736 (1933), it would be anomalous to treat legal malpractice claims differently. If public policy forbids the assignment of personal tort claims, it could only be a disfigured and gnarled public policy which would nevertheless permit the assignment of legal malpractice claims. There can be little doubt that if faced with this question, the Missouri courts would also prohibit the assignment of legal malpractice claims for the reasons stated by the *Goodley* court.[7]

## CONCLUSION

Because appellant's cause of action for legal malpractice is a personal, unassigna-

ble claim, it is not subject to attachment and execution and may therefore be exempted from the bankruptcy estate. Accordingly it is hereby

ORDERED that the judgment of the Bankruptcy Court is REVERSED. It is further

ORDERED that the Trustee's objection to appellant Scarlett's claim of exemption to the cause of action is OVERRULED.

IT IS SO ORDERED.

---

7. The trustee has raised, for the first time, the argument that the claimed exemption should be disallowed because appellant concealed her malpractice claim during the original bankruptcy proceedings. Not only has the trustee failed to preserve that argument for review, but the argument is simply unsupported by the record.