**In re Timothy E. LOE and Gloria J. Loe, Debtors.**

**Mark C. HALVERSON, Trustee, Plaintiff,**

v.

**MICO, INC., Profit Sharing Plan, a/k/a Minnesota Automotive, Inc. Profit Sharing Plan, Trust for MICO, Inc. Profit Sharing Plan, and Daniel McGrath, Brent McGrath, and Carol A. Otto, as Trustees of the Trust for MICO, Inc. Profit Sharing Plan, Defendants.**

Bankruptcy No. 3–86–180.
Adv. No. 3–86–15.

United States Bankruptcy Court, D. Minnesota, Third Division.

Feb. 1, 1988.

Mark Halverson, Robert J. Winzenburg, Mankato, Minn., for plaintiff.

John Nichols, Phillip Bohl, Minneapolis, Minn., for defendants.

## ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This proceeding was commenced by the Chapter 7 trustee of the Timothy E. and Gloria J. Loe bankruptcy case, against MICO, Inc. Profit Sharing Plan (the Plan) and the Trust for the Plan, for turnover of funds representing the Debtor, Timothy Loe's, interest in the Plan. Cross-motions for summary judgment and a Stipulation of Facts were filed; oral arguments were heard on February 19, 1987. The Trustee, Mark Halverson, appeared on his own behalf and was also represented by Robert J. Winzenburg. The Plan was represented by John Nichols and Phillip Bohl. The matter was taken under advisement and a decision held in abeyance until the Eighth Circuit Court of Appeals ruled on *Calvert v. Bongards Creameries*, 835 F.2d 1222 (8th Cir. 1987). Now, based on the briefs and arguments of counsel, and the record and files herein, and the Court being fully advised in the matter, the following Order is made pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I. BACKGROUND

Debtors Timothy E. and Gloria J. Loe filed for bankruptcy under Chapter 7, on January 2, 1983. On an Amended Schedule B-4 of their petition, Debtors claimed an exemption under MINN.STAT. § 550.37, Subd. 24, for their interest in the MICO, Inc. Profit Sharing Plan. The trustee objected to the exemption on the basis that it was not reasonably necessary for Debtors' support. In addition to responsive memoranda to the trustee's objection filed by the Debtors, the Plan separately responded to the trustee's objection. The Plan maintained that the Debtors' interest in the Plan was not property of the bankruptcy estate under 11 U.S.C. § 541, and that this issue could be decided only through an adversary proceeding. Counsel for the Plan and the trustee subsequently agreed that the only issue to be determined in connection with the trustee's objection to Debtors' claimed exemption in the Plan, was whether the Plan funds were reasonably necessary for Debtors' support, pursuant to MINN. STAT. § 550.37, Subd. 24; in the event the trustee's objection was sustained, the bankruptcy trustee would bring an adversary proceeding against the Plan and Trust to determine whether Plan funds are property of the bankruptcy estate under 11 U.S.C. § 541. This Court sustained the trustee's objection by order dated June 17, 1986, 63 B.R. 259.[1]

The specific issues raised in this adversary proceeding are: (A) whether the Debtors' interest in the Plan is property of the estate; (B) if so, whether their interest in the Plan is exempt under 11 U.S.C. § 522(b)(2)(A); and (C) if not, whether the trustee is entitled to have the funds representing Debtors' interest in the Plan immediately turned over to him; or entitled to assign or transfer Debtors' interest in the Plan to creditors.

## II. FINDINGS OF FACT

Debtor Timothy Loe has been employed by MICO, Inc. (MICO), as a purchasing agent since October 3, 1968. MICO sponsors the MICO, Inc. Profit Sharing Plan. Debtor is and has been a participant in the Plan since December 31, 1970. At the time they filed for bankruptcy, Debtors had a vested interest in the Plan and trust totalling $71,013.95.[2]

The Plan is a pension plan as defined in § 3(2) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1002(2). The assets of the Plan are held in the Trust for MICO, Inc. Profit Sharing Plan and each participant has an account maintained for him or her under the Trust.[3]

---

1. In its Order, the Court inadvertently addressed the issue of whether Debtors' interest in the Plan was property of the estate.

2. Vesting in this context means that Debtors' right to this amount is nonforfeitable and will be paid in accordance with the terms of the Plan at the time and in the manner prescribed by the Plan provisions.

3. The account is maintained for bookkeeping purposes only; a participant does not have claim to any particular assets in the trust.

The Plan is a qualified plan under § 401(a) of the Internal Revenue Code, 26 U.S.C. § 401(a), and the Trust is exempt from tax under § 501(a) of the Internal Revenue Code, 26 U.S.C. § 501(a).

Both the Plan and Trust contain a spendthrift provision, restricting assignment and alienation of Plan benefits, to meet a condition of the Internal Revenue Code § 401(a)(13), 26 U.S.C. § 401(a)(13), for tax qualification, and as required by ERISA § 206(d), 29 U.S.C. § 1056(d).

The Plan was established in 1959 and as of December 31, 1985, had nearly 200 participants and assets valued in excess of $10,000,000.00.

Legal title to the Trust assets is in the name of the trustees of the Trust. As of December 31, 1986, the Trust had three trustees, two of whom were officers and/or directors and shareholders of MICO, and one who was an employee of MICO. Seventy-five percent of the Trust assets are managed by the trustees and 25 percent are managed by outside investment advisors.

MICO is the Plan administrator and administers the Plan through its Board of Directors.

MICO's contributions to the Plan are discretionary and determined annually by the Board of Directors. The Board of Directors has the discretion to refrain from making any contributions in a particular year; to permanently discontinue contributions; or to terminate the Plan or Trust at any time. Contributions to the Plan are permitted only if MICO has profits or accumulated profits. If contributions are made, each participant's account is allocated an amount equal to the ratio that the participant's compensation for the year bears to the combined compensation for the year of all participants.[4] Voluntary employee contributions are permitted.

Trust earnings, gains or losses are credited to accounts in the Trust as of December 31, of each year. Earnings, gains and losses are generally credited to an account in the ratio that the balance of a participant's account bears to the to the total plan assets.

Distributions under the Plan are made to participants upon death, disability, retirement or other termination of employment. Distributions are not permitted during employment. Normal retirement age under the Plan is age 65. Early retirement at age 62 is permitted if the participant has at least five years of service.

Participants can elect to have distributions made in a lump sum, in two or more annual installments, or in a form of annuity contract.

In the event that a participant terminates his employment, MICO has discretion to defer distribution until the earlier of death, disability or retirement, if a participant competes with MICO; further, it can defer distribution for two years after a participant's termination to determine if the participant is or will compete with the company. Immediate distribution of benefits upon termination of employment can also be denied if the employee has committed certain crimes or violated certain civil laws.

Participants may borrow funds from the Trust for the purpose of either investing them; or purchasing or improving a principal residence. MICO generally discourages loans from the Trust, as the funds are intended for future retirement security. Furthermore, loans present certain risks to the Trust, such as the possibility of default without the ability to offset delinquent loans against the borrower's account until the participant terminates employment.

Debtor Timothy Loe is not a trustee or fiduciary of the Plan, and he is not involved in the administration of the Plan. He is not, and has never been, an officer, director or shareholder of MICO.

Company contributions have been made annually to the Plan every year since Debtor became a participant. Debtor has been eligible to participate in each of these con-

---

4. Only *eligible* participants' accounts are allocated a share of the contributions made to the Plan in a given year. To be eligible, a participant must have 1,000 hours of service during the year and be employed by MICO on December 31 of the year for which contributions are made.

tributions. Debtor has not made any voluntary employee contributions to the Plan.

Debtor is 38–years old and still employed by MICO; thus, he has not received and currently is not receiving distributions from the Plan. As of December 31, 1986, MICO had no knowledge that Debtor committed any acts which would cause it to defer distribution of benefits to Debtor, if Debtor were to terminate his employment.

Debtor has not applied for or received a loan from the Plan.

## III. CONCLUSIONS OF LAW

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There are no genuine issues of material fact in this proceeding and judgment will be rendered as a matter of law.

### A.

The dispute between the parties concerning whether Debtors' interest in the Plan and Trust are property of the estate under 11 U.S.C. § 541, arises from their differing interpretations of an Eighth Circuit Court of Appeals decision, *In re Graham*, 726 F.2d 1268 (8th Cir.1984).

*Graham* addressed the issue of whether a debtor's "interest in the [ERISA] pension plan created by his employer was excluded from his bankruptcy estate under § 541(c)(2) of the Bankruptcy Code as a property interest subject to a restriction on alienation 'enforceable under applicable nonbankruptcy law.' 11 U.S.C. § 541(c)(2)." [5] The Court held, and Defendant so acknowledges, that "applicable nonbankruptcy law" refers only to state law; § 541(c)(2) operates to exclude from a bankruptcy estate only traditional spendthrift trusts enforceable under state law. Thus, the parties agree that, in this case, the Plan's provision restraining alienation,

and the fact that the restraint is enforceable under federal law, is not sufficient to exclude Debtors' interest in the Plan from property of their bankruptcy estate under § 541(c)(2).

The Circuit Court did not determine in *Graham* whether the plan in that case qualified as a spendthrift trust under state law. The issue was not raised on appeal. The Court concluded, however, that the plan was property of the bankruptcy estate under 11 U.S.C. § 541(c)(1). The Bankruptcy Court did address the issue of whether the plan qualified as a spendthrift trust under state law and found that it clearly was not a spendthrift trust.

Defendants urge this Court to interpret the Eighth Circuit's affirmance of the District Court's opinion, which affirmed the Bankruptcy Court, as standing for the proposition that where there is a question whether a pension plan is property of the estate, the Plan should be analyzed as to whether it qualifies as spendthrift trust under state law. They argue that the Plan in this case does qualify as a spendthrift trust under Minnesota law and, therefore, should be excluded from property of the bankruptcy estate under 11 U.S.C. § 541(c)(2).

Plaintiff argues that under *Graham*, pension plans simply do not fit within 11 U.S.C. § 541(c)(2), and, without exception, are property of the estate under § 541(c)(1).

■ The Court agrees with Plaintiff. Although the specific issue of whether the pension plan in *Graham* qualified as a spendthrift trust under state law was not raised on appeal, the Circuit Court, in determining that ERISA was not "applicable nonbankruptcy law", stated that Congress intended pension plans to be included as property of the bankruptcy estate.

There is no indication whatever that Congress intended § 541(c)(2) to be a broad exclusion which would apply to keep all debtors' entire ERISA plan benefits out of the estate. To the contrary, pension

---

5. 11 U.S.C. § 541(c)(2) states: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

benefits are specifically treated under the Code's *exemption* provision, clearly indicating that they were intended and assumed to be part of the estate. (emphasis in the original).

．　　．　　．　　．　　．

We thus see a coherent scheme regarding a debtor's pension rights under the Code consistent with the Code's general policy. The question of pension rights is dealt with as a matter of exemption. *A debtor's interest in pension funds first comes into the bankruptcy estate.* To the extent they are needed for a fresh start they may then be exempted out. (emphasis added)

*In re Graham,* 726 F.2d at 1272–1273.

*Graham* seems to compel the conclusion that ERISA plans are not and cannot be traditional spendthrift trusts protected from becoming property of the estate under 11 U.S.C. § 541(c)(2). Under *Graham,* pension plans are dealt with by way of exemption under 11 U.S.C. § 522, and not by way of exclusion under 11 U.S.C. § 541(c)(2). The fact that the Bankruptcy Court in *Graham* discussed whether the ERISA plan in that case was a traditional spendthrift trust, and was affirmed by the Eighth Circuit, does not alter this conclusion. Indeed, the Bankruptcy Court's analysis is not inconsistent with this conclusion. It noted that:

> Congress provided an explicit exemption for tax-qualified ERISA funds in § 522(d)(10)(E). It is reasonable to infer that Congress would not have provided such an exemption if the debtor's interest in such funds was not property of the estate under § 541(a)(1) or was excepted from the estate under § 541(c)(2).

*In re Graham,* 24 B.R. 305, n. 5 (Bkrtcy.N.D.Iowa 1982).

However, even if Defendants were correct in their assertion that every ERISA plan should be evaluated as to whether it is a spendthrift trust under state law in order to determine whether it is excluded from property of the estate under 11 U.S.C. 541(c)(2), the Court is convinced that the Plan in this case is not a spendthrift trust under Minnesota law. In Minnesota, a spendthrift trust is one in which: (1) the trust implicitly or explicitly prohibits the voluntary and involuntary alienation of the beneficiary's interest; (2) the beneficiary is a donee or testamentary beneficiary and is not the settlor of the trust;[6] and (3) the beneficiary has no present dominion or control over the trust corpus. *Iannacone v. Trustees of Pillsbury Co. Stock Purchase and Investment Plan and Martin E. Hanson,* 84 B.R. 598 (D.Minn.1987); *see In re Moulton's Estate,* 233 Minn. 286, 46 N.W.2d 667 (1951).

The Plan, in this case, contains the requisite restriction prohibiting alienation of the Debtors' interest. But spendthrift language cannot, by itself, create a spendthrift trust. Employee participants under this Plan are not donee beneficiaries. Although Debtors have made no monetary contributions to the Plan, and the Plan, at least so far as their interest is concerned, has been funded by the employer, the employer's contributions are profits of the business and fruits of the employee's work; and, they are a form of employee compensation.

This is tacitly recognized in the Plan by the facts that employees automatically become participants in the Plan after one year of service and attainment of the age of 21 years; and that they share in the funds in the same proportion that their yearly compensation bears to the yearly combined compensation of all employees.

---

6. Inherent in recognition of the validity of spendthrift trusts in Minnesota has been acceptance of the premises: that one has the right to control the disposition and to limit the use of one's own property conferred by gift or bequest; and, that a beneficiary's creditors are not prejudiced by spendthrift provisions in gifts or bequests since, absent the generosity of the donor or devisor, the beneficiary would have no right, entitlement, or interest in the property given or bequeathed, either directly or indirectly. Thus, nothing is insulated from creditors by a spendthrift trust that they might otherwise become entitled to. Accordingly, the nature of the corpus and its source, are critical to the determination under Minnesota law of whether a particular trust is a valid spendthrift trust.

Exhibit A, MICO, Inc. Profit Sharing Plan, Article 4.1, 5.2. It is further evident from the fact that that Plan funds are ultimately taxed to the employees as income upon distribution. It is noteworthy that employees are not called beneficiaries of the Plan; rather, they are participants. The reason is clear: all employees contribute to the Plan at least indirectly through their work.

Further, Plan participants have some present control over the trust corpus. They may terminate their employment and receive a distribution of the amount representing their interest in the Plan.[7] A Plan participant may also obtain loans from the trust to be used for investment purposes or for the purchase or improvement of a principal residence. Such control, although limited, is inconsistent with the concept of a spendthrift trust.

Based on the above, the Court concludes that the ERISA plan in this case is property of the estate under 11 U.S.C. § 541(c)(1).

**B.**

Defendants' assertion that Debtors' interest in the Plan and Trust is exempt under 11 U.S.C. § 522(b)(2)(A) is without merit.[8] *Graham* clearly held, as Defendants acknowledge, that "ERISA [is] not a 'Federal law' upon which a § 522(b)(2)(A) exemption could be based." *In re Graham*, 726 F.2d at 1274.

**C.**

■■■■ Having found that the Debtors' interest in the Plan is the property of the estate, the Court is nevertheless bound to conclude that the trustee has no immediate right to the funds representing Debtors' interest in the Plan; nor does he have the right to assign or sell the estate's interest in the Plan. Under 11 U.S.C. § 541, the trustee succeeds only to the title and rights in property that the Debtors had, and he takes the property subject to the same restrictions that existed at the commencement of the case. *See: Calvert v. Bongards Creameries*, 835 F.2d 1222 (8th Cir. 1987). A debtor's rights may not be expanded beyond what they were at the commencement of the case. H.R.REP. NO. 595, 95th Cong., 1st Sess. 367–68 (1977); S.REP. NO. 989, 95th Cong., 2d Sess. 82–3 (1978) U.S.Code & Cong. Admin.News 1978 pp. 5787, 5868, 5869, 5963, 6322, 6325. Accordingly, the trustee's interest in the pension plan must be limited to the same extent as the Debtors' interest. Since the Debtors have no right to present distribution (Stipulation of Facts, p. 8), neither does the trustee.

The Court is aware that this circumstance may cause unsecured creditors to face a potentially lengthy delay in satisfaction of their claims, and the Court recognizes that such delay is contrary to the goal of expeditious administration of estates. However, as recognized in this district and affirmed by the Court of Appeals in *Bongards*, the goal of expeditiously administering estates is subordinate to the basic principle that § 541 of the Bankruptcy Code "does not create new substantive rights in the property of the estate." *In re Schauer*, 62 B.R. 526, 532 (D.Minn.1986) and *Calvert v. Bongards Creameries*, 835 F.2d at 1227.

**IV. ORDER**

1. Plaintiff's summary judgment motion for a determination that Debtors' interest in the pension plan is property of the estate under 11 U.S.C. § 541(c)(1) is granted. De-

---

7. No evidence was presented suggesting that MICO routinely withholds distributions of benefits for two years following an employee's termination or that it has frequently found a basis on which to withhold payment of terminated employees' benefits until retirement.

8. 11 U.S.C. § 522(b)(2)(A) states: "(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. ... Such property is— ... (2)(A) any property that is exempt under Federal law, other than subsections (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period that in any other place; and ..."

fendants' summary judgment motion on this issue is denied.

2. Plaintiff's summary judgment motion on the issue of whether Debtors' interest in the pension plan is exempt from property of the estate under 11 U.S.C. § 522(b)(2)(A) is granted. Defendants' summary judgment on this issue is denied.

3. Plaintiff's summary judgment motion for a turnover of funds representing the Debtors' interest in the pension plan or for an order allowing it to transfer Debtors' interest in the pension plan is denied. Defendants' summary judgment motion on this issue is granted. Defendants shall turn over to the trustee funds representing Debtors' interest in the Plan as and when the Debtors, or either of them, would otherwise become entitled to a distribution of the funds under the terms of the Plan.

Let Judgment Be Entered Accordingly.