In re Jeffrey Allison SCHMITT, Debtor.

Bankruptcy No. 89–41381–W–13.

United States Bankruptcy Court,
W.D. Missouri.

April 20, 1990.

Rick Fink, Kansas City, Mo., Chapter 13 Trustee.

Ida Turner, Kansas City, Mo., for debtor.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

### I. ISSUE

1. Whether the Debtor's interest in a profit sharing plan in which the Debtor became a participant by virtue of his employment, that is funded exclusively by employer contributions and also provides that the Debtor may request withdrawals in certain limited circumstances, subject to approval by a plan Advisory Committee, constitutes an asset of the bankruptcy estate available for distribution to the creditors.

2. Whether the Debtor's proposed Chapter 13 plan is confirmable.

## II. STATEMENT OF FACTS

On June 26, 1989, Jeffrey Allison Schmitt (Debtor) filed a petition for relief under Chapter 13 of the Bankruptcy Code. The Debtor is an active employee of Hallmark Cards, Inc. of Kansas City, Missouri, where he has worked for ten years. The Debtor did not include his interest in Hallmark Cards, Inc. Employee Profit Sharing and Ownership Plan (the Profit Sharing Plan) on the schedule of assets submitted to the Trustee. The Profit Sharing Plan is a qualified plan under the Internal Revenue Code, 26 U.S.C. § 401. The Profit Sharing Plan is classified under the Employee Retirement Security Act of 1974 (ERISA) as a "defined contribution plan". See 29 U.S.C. § 1001, et seq.

The Debtor became a participant in the Profit Sharing Plan automatically by virtue of continuous employment at Hallmark for more than one year.[1] All contributions to the Profit Sharing Plan are made by Hallmark. The Hallmark Board of Directors determines the amount contributed. Individual participants receive allocations to personal accounts based on their Total Earnings.[2] No employee contributions are permitted.[3]

After five years of service at Hallmark, a Plan participant may withdraw a portion of his vested Accrued Benefits.[4] The participant must file a written request with the Plan's Advisory Committee.[5] Subject to "its sole discretion" and the limitations set forth in Sec. 5.06, the Advisory Committee may authorize payment to the participant of up to a maximum of 25% of the "participant's Accrued Benefit".[6]

Withdrawals may only be made under Sec. 5.06 for the following purposes:

(1) personal or family medical expenses that are not routine or minor, or otherwise covered by insurance;

(2) purchase or renovation of participant's principal residence; and

(3) college education expenses of participant's children.

The entire vested amount is available for distribution following termination of employment by a participant because of resignation, retirement, permanent disability, discharge or death.[7] If the vested amount exceeds $3,500.00, the participant may elect to take the distribution as either a single lump sum payment or in annual installments over a five, ten or fifteen year period.[8]

The Debtor's current balance in the Plan is approximately $30,398.87. Because the Debtor has more than seven years of ser-

---

1. The Profit Sharing Plan, Art. III, § 3.02(a) provides that "every Employee shall begin participation in this Plan on the first day of the Plan Year following his continuity date".

2. *Id.* at Art. IV, Sec. 4.01(a) provides "Each Member Corporation shall, by resolution adopted by its board of directors, determine the amount to be contributed out of profits to the Trust on behalf of employees of such Member Corporation for each Plan year". *Id.* at 4.03(a) provides that "Each Company contribution shall be allocated among the individual accounts of Participants".

3. *Id.* at Art. IV, Sec. 4.01(c) provides that "No Participant shall be required or permitted to make contributions to the Trust".

4. The Profit Sharing Plan, Art. IV, Sec. 5.06(a) provides that "A participant with five or more years of service may file a written request to withdraw a portion of his Vested Accrued Benefits".

5. *Id.*

6. *Id.* at 5.06(b) provides "The maximum amount which may be withdrawn pursuant to this Section 5.06 shall be 25% of a Participant's Accrued Benefits".

7. *Id.* Art. II, Sec. 2.21 defines termination of service as "cessation of employment by reason of resignation, discharge, any form of retirement, death, or permanent disability". *See also* Art. V, Distributions And Withdrawals.

8. The Profit Sharing Plan, Art. V, Sec. 5.02(b)(1) provides that "the Participant may elect to receive payment of his Vested Accrued Benefits either (i) in a single lump sum payment or (ii) in annual installments for a period of five, ten, or fifteen years. The Participant may also request a date on which the lump sum payment or the first installment is to be paid ...".

vice with Hallmark, he is 100% vested in this amount. The Debtor has made withdrawals totaling $8,081.36 from his account sometime before the filing of his Chapter 13 petition. At the time of filing, approximately $1,500.00 is available for withdrawal by the Debtor. The Debtor is 30 years old, single, in good health, with no dependents or unpaid medical bills.

## III. DISCUSSION

The Trustee in this case argues that the Debtor's proposed Chapter 13 plan may not be confirmed because it fails to satisfy the requirements of 11 U.S.C. § 1325(a)(4).[9] The Trustee's position is that the Debtor's interest in the Profit Sharing Plan is includable in the bankruptcy estate according to *In re Swanson*, 873 F.2d 1121 (8th Cir. 1989); and *In re O'Brien*, 94 B.R. 583 (W.D.Mo.1988). The Trustee contends that the Debtor failed to schedule his $30,000.00 vested interest in the Hallmark Profit Sharing Plan as an asset of the bankruptcy estate and that the Debtor's proposed Chapter 13 plan must fail because the unscheduled interest would be available for distribution to unsecured creditors in a Chapter 7 proceeding. The Trustee further argues that the Debtor's interest in the Profit Sharing Plan is not exempt under Mo.Rev.Stat. § 513.427[10] or 513.-430(10)(e)[11] according to this court's recent decision *In re Gaines*, 106 B.R. 1008 (Bankr.W.D.Mo.1989).

The Debtor, on the other hand, argues that the Debtor's interest in the Profit Sharing Plan constitutes an interest in a valid spendthrift trust and is, therefore, excludable from the bankruptcy estate under § 541(c)(2) of the Bankruptcy Code.[12] Alternatively, the Debtor argues that even if the Profit Sharing Plan is property of the estate, that the Trustee can only exercise the rights possessed by the Debtor under the Plan. In other words, the bankruptcy estate includes only that portion of the Debtor's interest in the Plan presently available for withdrawal. Under this analysis, according to the Debtor, the Trustee is not entitled to the $30,000.00 vested interest, but is instead limited to the amount presently available for withdrawal by the Debtor—$1,538.70.

The Debtor further urges the court, that even if his interest in the Profit Sharing Plan is includable in the bankruptcy estate, that this interest may be exempted under Mo.Rev.Stat. § 513.427. The Debtor relies on *Mackey v. Lanier Collections*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) to support this proposition and attempts to distinguish *In re Gaines*, 106 B.R. 1008. Furthermore, the Debtor argues that the Debtor's interest in the Profit Sharing Plan is not subject to attachment and execution under Missouri law.[13] As a last resort, the Debtor argues that the court may confirm a plan even if the requirements of § 1325(a) are not satisfied. The merits of these arguments are discussed below.

---

9. 11 U.S.C. § 1325(a)(4) provides "the court shall confirm a plan if ... (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date;"

10. § 513.427 provides that "Every person by or against whom an order is sought for relief under Title 11, United States Code, shall be permitted to exempt from property of the estate any property that is exempt from attachment and execution under the Law of the State of Missouri, or under federal law, other than Title 11, United States Code, § 522(d), and no such person is authorized to claim as exempt the property that is specified under Title 11, United States Code, § 522(d)."

11. Mo.Rev.Stat. § 513.430 is entitled "Property exempt from attachment and execution". Section 513.430(10(e) provides an exemption for "a payment under a stock bonus, pension, profit-sharing, annuity or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the—support of such person and any dependent of such person ..."

12. 11 U.S.C. § 541(c)(2) provides that "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title".

13. The Debtor cites Mo.Rev.Stat. § 521.020 and § 525.260 for the proposition that the Profit Sharing Plan is debt not yet due and is therefore not subject to attachment or execution.

## A. APPLICATION OF § 541(c) TO ERISA PLANS

The Bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property". 11 U.S.C. § 541(a). Although § 541(a) is extremely broad, it does not include a profit sharing or pension plan subject to "a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law". 11 U.S.C. § 541(c)(2). According to the legislative history, this provision was intended to "preserve restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law". S.Rep. No. 989, 95th Cong., 2d Sess. 83 *reprinted* in 1978 U.S.Code Cong. & Ad. News 5787, 5869. However, the Courts are split as to whether the anti-alienation clauses required by ERISA [14] constitute the type of transfer restrictions that allow an ERISA qualified plan to be excluded from the bankruptcy estate under § 541(c)(2).[15] The leading case from the Eighth Circuit is *In re Graham*, 726 F.2d 1268 (8th Cir. 1984).

In *Graham* the Court held that "Congress only intended by § 541(c)(2) to preserve the status traditional spendthrift trusts, as recognized by state law, enjoyed under the old Bankruptcy Act". *Id.* at 1271 *Graham* involved a debtor who established an ERISA qualified profit sharing plan through his one person professional corporation. Since *Graham*, the Eighth Circuit courts uniformly hold that the bankruptcy estate includes employee pension and profit sharing plans even if the plans are subject to ERISA's anti-alienation requirements. *See In re Swanson*, 873 F.2d 1121 (8th Cir.1989); *Education Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir.1987); *In re O'Brien*, 94 B.R. 583 (W.D.Mo.1988); *In re Mead*, 110 B.R. 434 (Bankr.W.D.Mo.1990); *In re Gaines*, 106 B.R. 1008 (Bankr.W.D.Mo.1989); *In re Gallagher*, 101 B.R. 594 (Bankr.W.D.Mo. 1989); *In re Loe*, 83 B.R. 641 (Bankr.D. Minn.1988); *In re Bowen*, 80 B.R. 1012 (Bankr.D.S.D.1987); *In re Rodriguez*, 82 B.R. 74 (Bankr.E.D.Ark.1987); *In re Flygstad*, 56 B.R. 884 (Bankr.N.D.Iowa 1986).

■ This court construes *Graham* to hold that "ERISA pension plans may not be excluded under § 541(c)(2) merely because they are ERISA pension plans" *In re Boon*, 108 B.R. 697, 702 (W.D.Mo.1989). Under this narrow interpretation of *Graham* an ERISA qualified plan may only be excluded from the bankruptcy estate if it also satisfies the requirements of spendthrift trust under state law.

## B. SPENDTHRIFT TRUSTS

The Court accepts the proposition that an ERISA plan may in some circumstances also qualify as a traditional Spendthrift trust and thus, be excluded from the bankruptcy estate under § 541(c)(2). The threshold issue in the instant case is whether the Debtor's interest in the Profit Sharing Plan qualifies under Missouri law as a

---

14. 29 U.S.C. § 1056(d)(1) (1988) provides that "Each pension plan shall provide that benefits provided under the plan shall not be assigned or alienated. The Hallmark Profit Sharing Plan provides in Art. VIII, Sec. 8.01 that "(a) No Participant shall have any power to assign, transfer, pledge, encumber, or alienate any interest in the Trust and any attempt to do so shall be void. Except as provided in subsection (b), such an interest shall not be subject to levy, attachment, garnishment or other legal process to enforce payment of any claim against a Participant".

15. One group of courts holds that ERISA qualified plans are initially includable in the bankruptcy estate unless some applicable exemption applies. *See e.g., In re West*, 64 B.R. 738, 741 (Bankr.D.Ore.1986), *aff'd*, 81 B.R. 22 (9th Cir. BAP 1987); *In re Bartlett*, 67 B.R. 455 (Bankr. W.D.Mo.1986); *In re Kendrick*, 106 B.R. 605 (Bankr.W.D.Mo.1988); *In re Hysick*, 90 B.R. 770 (Bankr.E.D.Pa.1988); *In re Hohl*, 81 B.R. 450 (Bankr.N.D.Ill.1987); *In re McKenna*, 58 B.R. 221 (Bankr.N.D.Iowa 1985). The other group of courts holds that ERISA plans are excludable under 11 U.S.C. § 541(c)(2) if the plan constitutes a valid spendthrift trust under state law. *See e.g., In re Swanson*, 873 F.2d 1121 (8th Cir.1989); *Matter of Brooks*, 844 F.2d 258 (5th Cir.1988); *McLean v. Central States, Southeast and Southwest Areas Pension Fund*, 762 F.2d 1204 (4th Cir.1985); *In re Daniel*, 771 F.2d 1352 (9th Cir.1985); *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985).

spendthrift trust.[16] If the Hallmark Plan does not satisfy the requirements for a spendthrift trust then the Debtor's interest in the Plan is includable in the bankruptcy estate unless otherwise exempt.

Missouri recognizes spendthrift trust provisions as valid and enforceable. Mo. Rev.Stat. § 456.080 sets out the statutory requirements for validity. The Missouri courts define a spendthrift trust as—

> [O]ne created for the support and maintenance of the beneficiary, and designed and intended by its creator to secure the trust fund or trust estate against the improvidence or incapacity of the beneficiary by protecting the same against his creditors and rendering it inalienable by him before payment or termination according to the terms and conditions of the trust. *Gentemann v. Dyer,* 140 S.W.2d 75, 78 (Mo.Ct.App.1940).

In order for a spendthrift trust to be valid, "the beneficiary must have no absolute right to the possession of, or beneficial interest in ... the trust estate." *Id.*

Even though the trust contains spendthrift provisions the Court may declare the trust unenforceable if:

(1) The settlor of the trust is also the beneficiary of the trust;

(2) The beneficiary has dominion or control over the trust;

(3) The beneficiary may revoke the trust; or

(4) The beneficiary has powers in the trust.

*In re Gallagher,* 101 B.R. 594, 600 (Bankr. W.D.Mo.1989) *citing In re Swanson,* 873 F.2d 1121 (8th Cir.1989). In addition, the spendthrift provision will not be upheld if the Court finds that enforcement violates public policy. *Electrical Workers, Local No. 1 Credit Union v. IBEW–NECA Holiday Trust Fund,* 583 S.W.2d 154, 157 (Mo. banc 1979).

■ The first step in determining whether the Debtor's Profit Sharing Plan is a traditional spendthrift trust is to identify the settlor of the trust. A "self-settled" trust is invalid and unenforceable against creditors. Voluntary acceptance of a job which provides for participation in a profit sharing plan does not make the employee the settlor of the plan. *In re Boon,* 108 B.R. 697, 708 (W.D.Mo.1989); *In re Taylor,* 84 B.R. 159, 160 (Bankr.E.D.Mo.1988). Persons who "procure the creation of trusts for their own benefit or give consideration for the creation of trusts for their own benefit" are also included as indirect settlors of a trust. *Matter of Swanson,* 79 B.R. 422, 424 (D.Minn.1987).

In the instant case, the Debtor's only action was to accept employment at Hallmark. The Debtor automatically became a participant in the Profit Sharing Plan after one year of service without any additional effort on his part. Hallmark received no additional consideration from the Debtor in exchange for making him a participant.

---

16. Mo.Rev.Stat. § 456.080 provides:
1. All restraints upon the right of the cestui que trust to alienate or anticipate the income of any trust estate in the form of a spendthrift trust, or otherwise, and all attempts to withdraw said income of any trust estate from the claims of creditors of the cestui que trust, whether said restraints be by will or deed, now existing or in force, or, which may be thereafter executed in this state, be and the same are hereby declared null and void and of no effect, as against the claims of any wife, child or children, of said cestui que trust for support and maintenance.
2. The settlor may provide in the terms of the trust that the interest of a beneficiary may not be either voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee.
3. A provision restraining the voluntary or involuntary transfer of beneficial interests in a trust will prevent the settlor's creditors from satisfying claims from the trust assets except:
(1) Where the conveyance of assets to the trust was intended to hinder, delay, or defraud creditors or purchasers, pursuant to section 428.020, RSMo; or
(2) To the extent of the settlor's beneficial interest in the trust assets, if at the time the trust was established or amended:
(a) The settlor was the sole beneficiary of either the income or principal of the trust or retained the power to revoke or amend the trust; or
(b) The settlor was one of a class of beneficiaries and retained a right to receive a specific portion of the income or principal of the trust that was determinable solely from the provisions of the trust instrument.

The Hallmark Profit Sharing Plan is substantially similar to the plan at issue in the recent case *In re Boon*, 108 B.R. 697 (W.D. Mo.1989) in several important aspects. *Boon* held that a profit-sharing plan created by Citizen's Bank & Trust for its employees was not self-settled. As in *Boon*, the Debtor "has no real option but to participate in the profit sharing program." *Id.* at 707. The Debtor became a participant in the Hallmark Plan automatically, without any express decision to participate. Also similar to the facts of *Boon*, the employer makes all contributions to the plan. *Id.* The Hallmark Profit Sharing Plan expressly forbids employee contributions. This fact is the key distinction between the Hallmark Plan and the plan at issue in *In re Swanson*, 873 F.2d 1121. The *Swanson* court held that a debtor's pension fund was includable in the bankruptcy estate because, in part, the debtor's interest in a Teachers Retirement Fund was funded partially by contributions from the debtor. *Id.* at 1124. The Debtor in this case made no contributions to the Hallmark Profit Sharing Plan. Therefore, the Court finds that Hallmark is the settlor of the trust and the Debtor is the intended beneficiary.

■ The next step in the Court's inquiry is to determine whether the Debtor has "any control over the amount contributed or the manner or time of the contributions." *In re Taylor*, 84 B.R. 159, 160 (Bankr.E.D.Mo.1988). A spendthrift trust provision is invalid if the beneficiary can exercise dominion or control over the trust proceeds. *In re Swanson*, 873 F.2d 1121, 1124; *In re Gallagher*, 101 B.R. 594, 600 (Bankr.W.D.Mo.1989). *Taylor* suggests several questions that a court must consider to determine the extent of a debtor's control over a fund.[17]

■ The Profit Sharing Plan runs afoul of the analysis suggested in *Taylor* in two important aspects. The Plan more closely resembles a savings account established for a limited purpose rather than a trust retirement plan. The plan at issue is designated by Hallmark as the Employee Profit Sharing and Ownership Plan. The Court notes that Hallmark provides an entirely separate retirement plan for its employees, designated as such. The Plan also allows the Debtor to withdraw up to 25% of his vested interest for certain specified purposes. Withdrawals are permitted for:

(1) personal or family medical expenses;

(2) purchase or remodeling of a participant's home;

(3) college education expenses of a participant's children.

The Court notes that these purposes are not related to retirement but are the traditional goals of a savings account. Unlike the plans in *Boon*, the Hallmark Plan is not designed to provide its employees with "a reliable, stable and protected source of retirement income." 108 B.R. at 709.

The Debtor also may exercise dominion and control over his interest in the Profit Sharing Plan by virtue of the "power to determine when the plan terminates or when distributions are made." *In re Taylor*, 84 B.R. 159, 161 (Bankr.E.D.Mo.1988).

The Debtor can exercise absolute dominion and control over his interest by terminating his employment at Hallmark. It is at this point where the Court must part company with the *Boon* decision. The Court interprets *Boon* as limited to its facts. In this case, the Court agrees with the Trustee that *In re Swanson*, supra controls the result. In *Swanson*, the Court considered whether a Teachers Retirement Fund which entitled the participants to a full refund upon termination of employment was a traditional spendthrift trust. *Swanson* indicates that even a "very limited right of control" such as this is sufficient to invalidate a spendthrift trust provision. 873 F.2d at 1124.

The Debtor has an absolute right to receive his entire vested interest in the Profit Sharing Plan following termination of employment. If the vested amount exceeds $3,500.00 the Debtor has the option to either take the distribution as a single lump sum payment or in annual installments for a period of years selected by the Debtor.

17. *In re Taylor*, 84 B.R. 159, 161 (Bankr.E.D.Mo. 1988).

The Debtor's ability to dictate both the time and method of distribution is additional evidence of dominion and control maintained by the Debtor over the proceeds in the Plan.

The purpose of a traditional spendthrift trust is to "provide periodic payments, for the maintenance and support, of an individual to whom the settlor does not choose to entrust the entire gift all at once." *In re Mead*, 110 B.R. 434, 438 (Bankr.W.D.Mo. 1990). The Hallmark Profit Sharing Plan allows the Debtor to make substantial withdrawals for purposes other than maintenance and support. To allow the Debtor to shield funds in the Profit Sharing Plan from the claims of his creditors is contrary to the traditional purpose of a spendthrift trust. Spendthrift trust provisions violating public policy are unenforceable in Missouri. *Electrical Workers Local No. 1 Credit Union v. IBEW–NECA Holiday Trust Fund*, 583 S.W.2d 154 (Mo. banc 1979). The Court holds that the Hallmark Employee Profit Sharing and Ownership Plan is not enforceable as a spendthrift trust under Missouri law.

## C. TRUSTEE'S RIGHTS IN THE PROFIT SHARING PLAN

The Court must now consider the Debtor's argument that the Trustee's rights to the proceeds are limited to the amount presently available for withdrawal by the Debtor. The Debtor urges the Court to follow the decision of *In re Silldorff*, 96 B.R. 859 (C.D.Ill.1989). In *Silldorff* the Court held that although the debtor's pension plan was unenforceable as a spendthrift trust and thus became part of the bankruptcy estate; the trustee succeeds only to the debtor's limited rights to request a distribution. *Id.* at 867; *See also In re Loe*, 83 B.R. 641, 646 (Bankr.D.Minn. 1988). In both *Silldorff* and *Loe* the debtors were participants in ERISA plans similar to Hallmark's and were entitled to receive their entire vested interests upon termination of employment. *Silldorff* holds that the Trustee was not entitled to compel a lump sum distribution from the plan because "filing of a petition does not terminate an employee's relationship with an employer, nor does it increase the amount of assets in which the debtor may have held an interest; it merely changes the party who can demand or claim the assets." 96 B.R. at 859.

The *Silldorff* court equates the right of distribution from the pension with termination of employment. The proper analysis seems to be not whether the Debtor is presently entitled to receive a distribution, but instead, whether the debtor has rights which allow him to control distribution. It is the Debtor's rights to exercise dominion and control over the Profit Sharing Plan that render the Plan unenforceable as a spendthrift trust in this case. The Trustee, although having no power to terminate the Debtor's employment relationship at Hallmark, succeeds to the same rights to control distribution of the proceeds. Since the Debtor can absolutely obtain the proceeds, at any time, by terminating his employment, the Trustee in bankruptcy succeeds to that absolute right to compel distribution.

Although not addressing this issue directly, the cases cited *supra* from the Eighth Circuit, with the exception of *Loe*, follow this approach. A recent decision, *In re Mead*, 110 B.R. 434 (Bankr.W.D.Mo. 1990) indicates that when the beneficiary has the ability to obtain his vested interest upon retirement or termination that "the money he is entitled to obtain upon such termination should be brought into the estate, subject to any applicable exemptions." *In re Mead*, at 440. There are at least two courts, in construing similar pension plans, that distinguish between the right to request withdrawals from a right to receive payment. *See In re Boon*, 108 B.R. 697, 709 (W.D.Mo.1989); *In re Wallace*, 66 B.R. 834, 841 (Bankr.E.D.Mo.1986).

Although the Debtor's right to obtain funds appear limited to a mere right of request, the Debtor has almost unlimited control over distribution should he terminate his employment. Hallmark has no discretion to withhold payment in such a case. This significantly distinguishes the Trustee's rights in this case from those cases which form the basis of the Court's rationale in *In re Loe*, 83 B.R. 641 (Bankr. D.Minn.1988).

*Loe* relies on *Calvert v. Bongards Creameries,* 835 F.2d 1222 (8th Cir.1987) to support its conclusion that "the trustee succeeds only the title and rights in property that Debtors had, and he takes property subject to the same restrictions that existed at commencement of the case." *Loe,* 83 B.R. at 646. In *Calvert,* the bankruptcy trustee requested authority from the court to sell or assign the debtors' patronage margin certificates. These certificates are redeemable or assignable only with consent of the cooperative's board of directors. The court held that the trustee could not transfer or assign the certificates without the board's approval. 835 F.2d at 1225.

Other cases considering the extent of the trustee's power to redeem patronage certificates focus on the contingent nature of the debtor's interest. *See In re FCX, Inc.,* 853 F.2d 1149 (4th Cir.1988); *In re Lamar Farmers Exchange,* 76 B.R. 712 (Bankr.W. D.Mo.1987). In *Lamar Farmers,* this Court noted that the patronage creditors "represent an interest that may be paid at some unspecified later date to be determined by the board of directors." *Id.* at 716. In the case of patronage certificates, the discretionary power to control distribution rests entirely with cooperative's board of directors.

The patronage certificate cases shed no light on the trustee's powers in the instant dispute. The Hallmark Profit Sharing Plan does not give the Plan's Advisory Committee discretionary power to deny payment when a participate terminates employment.[18] The Debtor has absolute power to compel a lump sum distribution from the Plan at his own discretion. The court finds, therefore, that the Trustee in bankruptcy succeeds to this same power and may compel payment of the Debtor's $30,-000.00 interest into the estate.

### D. EXEMPTIONS UNDER MO.REV. STAT. § 513.427

■ The Debtor also argues that even if the court should find that the Profit Shar-

ing Plan is includable in the bankruptcy estate under § 541(a), that he is entitled to exempt the entire interest pursuant to Mo. Rev.Stat. § 513.427. The Debtor urges the court to find that the Profit Sharing Plan is exempt because it is not subject to attachment and execution under federal nonbankruptcy law. In effect, the Debtor asks the Court to reverse *In re Graham,* 726 F.2d 1268 (8th Cir.1984); and *In re Gaines,* 106 B.R. 1008 (Bankr.W.D.Mo.1989); or alternatively, to limit the application of these cases to circumstances where the debtor uses a corporation as his alter ego in order to control an ERISA fund.

*Graham* holds that "ERISA is not a federal law which provides exemption protection for debtors in bankruptcy." *Id.* at 1274. Likewise, *In re Gaines* holds that "Mo.Rev.Stat. § 513.427 cannot and does not create a Missouri ERISA exemption." 106 B.R. at 1016. The *Gaines* court concludes that in light of the Supreme Court's ruling in *Mackey v. Lanier Collections Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), that the debtor's pension funds were not exempt under Mo.Rev.Stat. § 513.427. *Mackey* involved a Georgia statute that expressly protected ERISA plans from garnishment. It may be that *In re Gaines* takes a somewhat pedestrian approach to *Mackey,* but it strikes this Court as the correct blend of *Mackey* and *Swanson* and *Graham.* The Supreme Court held the statute preempted because "a state may not grant rights to protect pension plans that relate to ERISA." 108 S.Ct. at 2185.

This Court held in *In re Kendrick,* 106 B.R. 605 (Bankr.W.D.Mo.1988) that Mo. Rev.Stat. § 513.427 is "merely reinforcement of the Missouri opt-out from the Federal Bankruptcy exemptions ..." *Id.* at 606. The *Gaines* court concludes that Mo. Rev.Stat. § 513.427 is an enabling provision that "is not effective without reference to some other statutory provision." 106 B.R. at 1015.

---

**18.** The Profit Sharing Plan, Art. V, Sec. 5.02(a) provides "If a participant's Termination of Service occurs for any reason other than his death, the Participant *shall* be entitled to a distribution of his vested Accrued Benefits ..." (emphasis added).

The Debtor argues that under federal nonbankruptcy law, specifically under ERISA, that the Profit Sharing Plan is exempt from attachment and execution. This Court agrees with *Gaines* that "Mo. Rev.Stat. § 513.427 is invalid to the extent that it relates to or is connected with the provisions of ERISA." *Id.*

The Debtor raises one final related argument for exemption of his interest in the Profit Sharing Plan under Mo.Rev.Stat. In *In re Gaines*, the court concludes that "the provisions of Mo.Rev.Stat. § 513.427 require an additional statutory provision granting property exempt status from attachment and execution before the court may allow an exemption to a Missouri debtor ..." 106 B.R. at 1022. The Debtor contends that the statutory language of Mo.Rev.Stat. § 521.020 and § 525.260 supports the proposition that the Profit Sharing Plan is not subject to attachment and execution under state law and, therefore, creates an exemption.

Mo.Rev.Stat. § 521.020 provides that "Attachment may issue on a demand not yet due in any of the cases mentioned in § 521.010.[19] Mo.Rev.Stat. § 521.010 lists fourteen grounds for attachment that can be grouped into three broad categories: (1) nonresident defendant; (2) concealment, removal or fraudulent transfer of property; (3) special cases. The Court finds as a matter of fact that none of the conditions set forth in Mo.Rev.Stat § 521.010 are present in the instant case.

Mo.Rev.Stat. § 525.260 provides that "debts not due to the defendant may be attached but no execution shall be awarded until they become due."

The Debtor relies on *In re Mitchell*, 73 B.R. 93 (Bankr.E.D.Mo.1987) to support his position that the interest in his Profit Sharing Plan is a debt not yet due under Missouri law. *Mitchell* involved an attempt to include an unliquidated personal injury tort claim in the bankruptcy estate. The *Mitchell* court held that the claim was exempt from attachment and execution under Missouri law and, therefore, was exempt from the bankruptcy estate pursuant to Mo.Rev. Stat. § 513.427. *Id.* at 94. The *Mitchell* decision cites *State ex rel. Government Employees Ins. Co. v. Lasky*, 454 S.W.2d 942 (Mo.Ct.App.1970) for the proposition that "to be a subject of garnishment, the debtor must be certain and not contingent." 454 S.W.2d at 950.

The Court finds the facts in *Mitchell* distinguishable from the facts in the instant case. An unliquidated tort claim remains contingent until a judgment is ren-

**19.** Mo.Rev.Stat. § 521.010 provides:

In any court having competent jurisdiction, the plaintiff in any civil action may have an attachment against the property of the defendant, or that of any one or more of several defendants, in any one or more of the following cases:

(1) Where the defendant is not a resident of this state;

(2) Where the defendant is a corporation, whose chief office or place of business is out of this state;

(3) Where the defendant conceals himself, so that the ordinary process of law cannot be served upon him;

(4) Where the defendant has absconded or absented himself from his usual place of abode in this state, so that the ordinary process of law cannot be served upon him;

(5) Where the defendant is about to remove his property or effects out of this state, with the intent to defraud, hinder or delay his creditors;

(6) Where the defendant is about to remove out of this state, with the intent to change his domicile;

(7) Where the defendant has fraudulently conveyed or assigned his property or effects, so as to hinder or delay his creditors;

(8) Where the defendant has fraudulently concealed, removed or disposed of his property or effects, so as to hinder or delay his creditors;

(9) Where the defendant is about fraudulently to convey or assign his property or effects, so as to hinder or delay his creditors;

(10) Where the defendant is about fraudulently to conceal, remove or dispose of his property or effects, so as to hinder or delay his creditors;

(11) Where the cause of action accrued out of this state, and the defendant has absconded, or secretly removed his property or effects into this state;

(12) Where the damages for which the action is brought are for injuries arising from the commission of some felony or misdemeanor, or for the seduction of any female;

(13) Where the debtor has failed to pay the price or value of any article or thing delivered, which by contract, he was bound to pay upon the delivery;

(14) Where the debt sued for was fraudulently contracted on the part of the debtor.

dered or a settlement is reached. The injured party is unable to collect upon the claim until he obtains a favorable verdict or negotiates a settlement. In both instances, it is uncertain whether the holder of an unliquidated tort claim will ever obtain a right to recover for his damages. In the case of the Profit Sharing Plan, the Debtor's interest has a presently ascertainable value. The Debtor is fully vested in the proceeds in the Plan. Distribution from the Plan is not an uncertain event. *In re Gaines* indicates that "contingent claims held by a debtor are not protected from attachment and execution ... based solely upon the time which the bankruptcy petition is filed ...". Accordingly this Court finds that the Debtor's interest is not sufficiently contingent to prevent attachment and execution under Missouri law.

## CONCLUSION

The final consideration for the court is whether *Guidry v. Sheet Metal Workers*, — U.S. ——, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990) implicitly prohibits any judicially created right of recovery against an ERISA plan. In *Guidry*, the Supreme Court invalidated a constructive trust imposed by the trial court upon the pension fund of a union member who defrauded the union. The Court, in dicta, indicates that ERISA restrictions on assignment or alienation of pension plans preclude garnishment and other equitable remedies. *Id.*, 110 S.Ct. at 685. The Court, also in dicta, expresses disapproval of judicially created exceptions to ERISA's restrictions on alienation and assignment. The Court states that "[a]s a general matter, court should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text ... the identification of any exception should be left to Congress." *Id.* at 687. In its broadest interpretation, *Guidry* at least raises the possibility that *In re Graham, supra,* and its progeny are incorrect. However, *Guidry* does not specifically address the spendthrift trust questions presented in *Graham* and more recently in *In re Swanson, supra.* In addition, it is arguable that *Graham's* conclusion is war-

ranted by the text of § 541(c). Until the Supreme Court chooses to issue a more definitive opinion on whether a non-spendthrift trust ERISA plan is subject to attachment and execution in bankruptcy this Court is obliged to follow the established precedent from the Eighth Circuit.

The Court holds that under Chapter 7 the Debtor's interest in the Hallmark Profit Sharing Plan is brought into the bankruptcy estate. The Profit Sharing Plan is not excludable under 11 U.S.C. § 541(c) because it is invalid as a spendthrift trust. The Trustee succeeds to the Debtor's right to compel a lump sum distribution. The Plan is not exempt under Mo.Rev.Stat. § 513.427 from attachment or execution. Therefore, the Court holds that the Debtor's Chapter 13 plan shall not be confirmed because it fails to schedule the Debtor's interest in the Profit Sharing Plan as an asset of the estate. Under the Debtor's proposed plan, the creditors would not receive an amount equal to the amount available for distribution under Chapter 7. The Court does not reach the Debtor's question of whether § 1325 imposes mandatory requirements for confirmation or merely discretionary guidelines for the court to follow when evaluating a proposed payment plan. The Court finds that § 1325(a)(4) is not satisfied by the Debtor's proposed Chapter 13 plan. Therefore, the Debtor's plan should not be confirmed by this Court.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.